UNITED STATES of America, Plaintiff,

v.

EIGHTY–EIGHT (88) DESIGNATED AC-
COUNTS CONTAINING MONIES
TRACEABLE TO EXCHANGES FOR
CONTROLLED SUBSTANCES, Defen-
dants.

No. 90–1203–CIV–NESBITT.

United States District Court,
S.D. Florida.

June 15, 1990.

B.B. Allen, Asst. U.S. Atty., Miami, Fla., for plaintiff.

Mark Schnapp, Holly Skolnick, Greenberg, Traurig, Hoffman, Lipoff, Rosen & Quentel, P.A., Jack Geckler, Hughes, Hubbard & Reed, Miami, Fla., Thomas K. Equels, Holtzman, Krinzman & Equels, G. Frank Quesada, Quesada & Martinez, Coral Gables, Fla., Clemente Vazquez–Bello, Wilfredo Rodriguez and Jose E. Sirven, Valdes–Fauli, Cobb, Petrey & Bischoff, Richard Brodsky, Paul, Landy, Beiley & Harper, Robert Martinez, Sharon Kegerreis, Zuckerman, Spaeder, Taylor & Evans, Miami, Fla., Carlos F. Concepcion, Concepcion DeGrandy & Sexton, Coral Gables, Fla., George Volsky, George Volsky, Miami, Fla., Armando Gutierrez, Gutierrez & Gutierrez, James McGuirk, James McGuirk, P.A., Coral Gables, Fla., Henry H. Bolz, Kelley Drye & Warren, Alan S. Fine, Kirk Munroe, Richey, Munroe, Fine & Goodman, Miami, Fla., Fred A. Schwartz, Amber Donner, Adorno & Zeder, Coconut Grove, Fla., Benedict P. Kuehne, Sonnett Sale & Kuehne, P.A., Joseph A. DeMaria, Greer, Homer & Bonner, Miami, Fla., Daniel J. Beller, Paul, Weiss, Rifkind, New York City, Roger Besu, Besu & Velez, P.A., Rebekah J. Poston, Fine, Jacobson, Schwartz, Nash, Block & England, Miami, Fla., Robert Targ, Robert Targ, P.A., South Miami, Fla., Sara Soto, Bailey & Hunt, Martin Raskin, Raskin & Graham, P.A., Sky Smith, Smith & Gellman, P.A., Miami, Fla., for defendants.

## OMNIBUS MEMORANDUM ORDER

NESBITT, District Judge.

This cause comes before the Court upon several Claimants' Motions to Dismiss, sup-

ported by an omnibus memorandum of law filed on May 30, 1990. A hearing on the issues raised in the omnibus memorandum was held on Friday, June 8, 1990, at which the United States, lead counsel for various Claimants, and other counsel were present and were heard thereon. For the reasons stated below, the Motions to Dismiss supported by the omnibus memorandum are DENIED.[1]

## PROCEDURAL HISTORY

This unprecedented case began in the Northern District of Georgia, where on March 6, 1989, the government indicted a Panamanian financial institution and various alleged members of what is commonly known as the "Medellin Cartel." *See United ed States v. Pablo Emilio Escobar–Gaviria, et al.*, No. 89–086–A–WCO. The indictment included a count seeking the criminal forfeiture of hundreds of bank accounts allegedly owned or controlled by the named defendants.

Pursuant to 21 U.S.C. § 853(e), the government, on April 10, 1990, sought from the United States District Court for the Northern District of Georgia an order freezing hundreds of accounts, including 690 "targeted" accounts.[2] The government also sought an order requiring the banks maintaining the accounts to provide the United States Attorney's Office with all records pertaining to the frozen accounts. In support of the request for seizure and for information, the government filed both the 279–page affidavit of DEA Special Agent David C. Panek, and, as an exhibit to the first affidavit, a second affidavit also

executed by Special Agent Panek.[3] On April 16, 1990, the Honorable William C. O'Kelley issued a restraining order freezing Group 1 accounts and ordering discovery as to those in Group 2. In the next ten days the court first modified and then partially extended the seizure and discovery portions of its original restraining order. On May 2, 1990, however, the court dissolved the restraining order as it pertained to the Group 2 accounts because the court decided that the government was improperly using the order solely for the purposes of obtaining discovery. *See United States v. Pablo Emilio Escobar–Gaviria*, No. 89–086 (N.D.Ga. May 2, 1990) (order partially dissolving restraining order).

On May 3, 1990, the United States filed with this Court an Application for Seizure Warrant which sought the seizure of seventy-two (72) accounts. In support of its application the government refiled Agent Panek's two previously described affidavits. The next day, United States Magistrate William C. Turnoff issued a seizure warrant for the seventy-two accounts.

On May 21, 1990, the United States filed an Amended Complaint seeking forfeiture of the eighty-eight accounts pursuant to 21 U.S.C. § 881(a)(6).[4] The complaint states at paragraph 5 that the accounts contain monies "directly traceable to exchanges for a controlled substance, and/or monies used or intended to be used to facilitate a narcotics violation." The complaint also sets forth the date and amount of the traceable deposits which in part form the govern-

---

1. The Court will rule on those motions to dismiss that did not join the omnibus memorandum after the government has had a chance to respond to them individually. The Court expects, however, that most if not all of the issues raised by these motions will be resolved by this Omnibus Order.

2. The accounts which the government sought to freeze or investigate were initially classified as either "Group 1" accounts, allegedly the operating accounts of the Cartel, or "Group 2" accounts. The accounts which are the subject of this action were "Group 1" accounts. As is now well known, the accounts that the government initially either froze or investigated included

those of the investment firm Merrill Lynch, Pierce, Fenner, and Smith, of a major Miami law firm, and of the Republic of China, among others.

3. The Court will discuss the significance and weaknesses of these affidavits below.

4. Prior to the government's filing of the amended complaint, several individuals and corporations filed separate actions seeking the return of their seized property. Many of these parties have also filed or presumably will file claims in the forfeiture action which is the subject of this Order. The Court will resolve by separate order the motions filed in these other actions.

ment's basis for forfeiture.[5] For reasons unknown to the Court, instead of clearly and fully alleging in the complaint the circumstances from which the claim arises, the United States incorporated by reference the Panek affidavits in the complaint.

On May 20, 1990, counsel filed an omnibus memorandum of law in support of the Motions to Dismiss which are the subject of this Order.

## ANALYSIS

Claimants move to dismiss the complaint primarily on two grounds: 1) the case's history of prosecutorial misconduct and abuse of process; and 2) the failure of the complaint to allege with particularity sufficient facts to support the assertion that the government has probable cause to believe that the bank accounts are subject to forfeiture.[6] The Court addresses below the Claimants' arguments in the order of their merit.

### 1. Probable Cause

■ It is well established that in forfeiture actions under 21 U.S.C. 881(a), the government must prove the existence of "probable cause for belief" that a substantial link exists connecting the defendant property to the exchange of a controlled substance. *United States v. Four Million, Two Hundred Fifty–Five Thousand*, 762 F.2d 895, 903 (11th Cir.1985), *cert. denied*, 474 U.S. 1056, 106 S.Ct. 795, 88 L.Ed.2d 772 (1986) (hereinafter *"$4,255,625.39"*). The Eleventh Circuit has defined probable cause as more than mere suspicion, but less than prima facie proof. *$4,255,625.39*, 762 F.2d at 904. Thus, the facts supporting a determination of probable cause may be entirely circumstantial, and the government need not tie the defendant property to any specific drug transaction. *Id.* Moreover, the facts must be judged " 'not with clinical detachment, but with a common sense view to the realities of normal life.' " *United States v. One Single Family Residence*, 731 F.Supp. 1563, 1567 (S.D.Fla. 1990) (quoting *Wilson v. Attaway*, 757 F.2d 1227, 1235 (11th Cir.1985)). After the government has shown probable cause, the burden shifts to the claimant to prove that the property falls outside the strictures of the statute. *United States v. A Single Family Residence and Real Property*, 803 F.2d 625, 629 (11th Cir.1986).

■ In accordance with the government's burden of proof at trial, the complaint filed against the defendant property must allege that the government has probable cause to believe that the property is subject to forfeiture. *United States v. $38,000 in U.S. Currency*, 816 F.2d 1538, 1548 (11th Cir.1987). Both the Federal Rules of Civil Procedure and the Supplemental Rules for Certain Admiralty and Maritime Claims (hereinafter "Supplemental Rules") apply to civil forfeiture actions, except where the two are inconsistent, in which case the Supplemental Rules apply. *$38,000*, 816 F.2d at 1547 n. 20. Thus Supplemental Rule E(2), rather than Fed.R. Civ.P. 8, governs the standard of pleading in forfeiture cases. *United States v. Real Property on Lake Forest Circle*, 870 F.2d 586, 588 n. 3 (11th Cir.1989); *United States v. Property Located at 4880 S.E. Dixie Highway*, 838 F.2d 1558, 1563 (11th Cir. 1988); *$38,000*, 816 F.2d at 1547.

---

**5.** In many instances, the accounts seized contain substantially more money than that alleged tainted by the traceable deposits. Certain accounts contain *no* traceable proceeds, but are allegedly "related" accounts. *See infra*, note 9.

**6.** Claimants also allege that the amounts seized by the government are grossly disproportionate to the amounts identified in the complaint as "traceable proceeds," but fail to identify with any specificity the relief requested. Although in at least one case, *United States v. Pole No. 3172, Hopkinton*, 852 F.2d 636, 638–39 (1st Cir.1988) the court dismissed a complaint for failure to

"precisely identify the portion of the property the government can keep," that issue need not concern the Court in the instant case. The complaint alleges that the government can keep the entire defendant account and also identifies the amount of funds in the accounts that allegedly are "traceable proceeds" from drug transactions. Thus, the Court leaves for another day the decision concerning what portion of the subject accounts the government can forfeit. The Court will schedule a separate hearing on the issue of proportionality as soon as is reasonably possible.

■ Supplemental Rule E(2) provides that "the complaint shall state the circumstances from which the claim arises with such particularity that the defendant or claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading." In other words, the complaint must contain the "requisite factual basis for its allegation that it has probable cause for forfeiture." *$38,000,* 816 F.2d at 1547. Because of the drastic nature of forfeiture actions, the standard is more stringent than the "notice pleading" necessary under Rule 8 of the Federal Rules of Civil Procedure. 12 C. Wright & A. Miller, *Federal Practice and Procedure* § 3242 (1973).

Claimants contend that the government's complaint fails to meet this more stringent standard and therefore, this Court should dismiss the action. Before addressing Claimants' argument, however, it is necessary to outline the facts of the two civil forfeiture cases in which the Eleventh Circuit has found a complaint deficient under Supplemental Rule E(2)[7] and to set forth the relevant allegations in the complaint. First, in *United States v. $38,000 in U.S. Currency, supra,* the Eleventh Circuit determined that the government's complaint was "completely devoid of factual support for the government's allegation that it has probable cause for forfeiture under section 881," and dismissed it. 816 F.2d at 1548. The only fact alleged in the complaint was that the defendant currency was seized by the Drug Enforcement Administration ("DEA") on a specific day. *Id.* The court stated that "the complaint contains not even a whiff of evidence" that the money in question is subject to forfeiture, and found the complaint deficient because it did "not provide claimants with notice of the basis for the government's contention that it has the requisite probable cause to believe that a substantial connection exists between the currency and the exchange of

a controlled substance." *Id.* Second, in *United States v. Property Located at 4880 S.E. Dixie Highway,* 838 F.2d 1558 (11th Cir.1988), the Eleventh Circuit found that the government's "bare bones" complaint was subject to dismissal pursuant to Supplemental Rule E(2). According to the court, the only paragraph of the complaint setting forth a basis for the forfeiture action was paragraph 5, which stated as follows:

5. By reason of the foregoing and pursuant to the provisions of Title 21, United States Code, Section 881(a)(6), the subject real property is subject to forfeiture to the United States of America.

*Id.* at 1559 (footnote omitted).

Not surprisingly, the Eleventh Circuit found that the above paragraph was insufficient to meet the standard set out in Rule E(2).

Set forth below is the full text of the government's allegations regarding probable cause for forfeiture of Claimants' bank accounts in the complaint filed in this action.

5. As more completely set forth in the referenced Application For Seizure Warrant and materials submitted in support thereof, plaintiff has demonstrated through an extensive investigation conducted by the U.S. Drug Enforcement Administration, with the assistance of the Internal Revenue Service, the Customs Service, and the Federal Bureau of Investigation, probable cause to believe that each of the seventy-two (72) designated accounts contained monies directly traceable to exchanges for a controlled substance, and/or monies used or intended to be used to facilitate a narcotics violation.

These allegations are clearly inadequate to meet the requirements of Rule E(2). The government, however, has incorporated by reference the Application for Seizure War-

---

7. We expect that the issue of sufficient particularity in the complaint will soon be clarified by the Eleventh Circuit sitting *en banc.* The court recently addressed the adequacy of civil forfeiture complaints in *United States v. Property in Greene & Tuscaloosa Counties,* 893 F.2d 1245 (11th Cir.1990), holding that the government's complaint was insufficient because it failed to allege a connection between defendant property and the illegal drug transactions. The decision was vacated on April 23, 1990, and will be reheard *en banc.*

rant.[8] The Affidavit of United States DEA Agent David C. Panek, submitted in support of the seizure warrant application, explains, albeit in a convoluted and verbose manner, the government's theory of how drug proceeds are transferred from this country to Panama and other foreign countries. Exhibit A to the Panek Affidavit and the Application for Seizure Warrant complete the government's theory. Exhibit A states that three money launderers had accounts, presumably all in Panama (although Uruguay is also mentioned), containing drug proceeds. Exhibit A further states that "[a]ll of these accounts were used to wire transfer the laundered drug proceeds back to the United States. These transfers are detailed [in the attachment to] Exhibit A." The attachment lists the date of the alleged transfer, the amount, the receiving bank and account, and the name of the account holder.

The Application for Seizure Warrant states in paragraph 5 that

In January 1990, following the ouster of Manuel Noriega, Federal agents traveled to Panama and requested the Attorney General of Panama to take the necessary steps under Panamanian law to obtain the records of the Panamanian bank accounts identified as having been used by Cartel money launderers. Examination of those and other foreign accounts demonstrated that during the period 1987–1989 almost $350 million dollars was wire-transferred back to U.S. banks, primarily in New York and Florida, which accounts were included in the previously referenced listing filed with the U.S. District Court for the Northern District of Georgia. A major portion of the Cartel accounts in Panama were maintained at Banco de Occidente (Panama) S.A., and on August 14, 1989, that firm pled guilty to the previously referenced Atlanta indictment for its criminal involvement in laundering the drug proceeds of the Cartel. This phase of the investigation was identified as POLAR CAP IV.

Although presented in a confusing and obtuse manner, a fair reading of this paragraph indicates that the government has alleged that the sources of the alleged transfers are Panamanian bank accounts of identified money launderers.

The Court now turns to the Claimants' argument for dismissing the complaint. Claimants do not dispute that the theory upon which the government's complaint rests, that is, that the government may seize accounts with funds traceable to illegal narcotics transactions, see *United States v. Banco Cafetero Panama*, 797 F.2d 1154 (2d Cir.1986), is a valid one.[9] Claimants' Omnibus Memorandum of Law in Support of Motions to Dismiss (hereinafter "Omnibus Motion") at 17. Rather, Claimants argue that the complaint must

---

**8.** The manner in which the government's pleadings and affidavits were presented has made the Court's task in analyzing the issues extremely difficult. All the facts necessary to understand the action were not outlined in the complaint in a concise, logical, and readable manner. It was necessary for the Court to refer to affidavits and other documents outside the complaint for any detailed understanding of the case. Rather than attaching the affidavits referred to in the complaint as exhibits, affidavits and exhibits thereto (which had been submitted to Judge O'Kelley on different dates) were filed separately. The Court had to read the verbose and confusing Panek Affidavit, which, in addition to initially baffling the reader, failed even to describe the entire scenario as the government views it. Finally, to gain an understanding of the government's factual basis for probable cause, the Court had to read Plaintiff's Application for Seizure Warrant in connection with Exhibit A to the Panek Affidavit. Given the global scope of this action and its sweeping effects on many individuals and corporations who may ultimately qualify as "innocent owners," such filings will not be tolerated. The Court hereby notifies the government that it will not accept any further papers unless they are prepared and presented in a logical, understandable, and orderly fashion.

**9.** As to a number of defendant accounts, the government has failed to allege that it can trace any deposits in those accounts to transfers from Cartel money launderers. See paragraphs 6(H), 6(S), 6(U), 6(X), 6(Z), 6(DD), 6(GG), 6(JJ), 6(KK), 6(LL), 6(MM), 6(ZZ), 6(III) of the Amended Complaint. The accounts are, presumably, the "related accounts" referred to in paragraph 8 of the Amended Complaint. The resolution of the issues arising from the government's failure to allege that these accounts contain traceable proceeds will await further proceedings.

fail because the government has not alleged with any particularity that the proceeds can in fact be traced to the eighty-eight designated accounts. Claimants admit that viewed in the best light, the government identifies certain accounts in Panama that allegedly have received drug proceeds. Transcript of the Proceedings on June 8, 1990 (hereinafter "Transcript") at 30. Thus, Claimants' argument centers primarily on the last step of the money laundering operation, the transfers from Panama to the United States, and the government's failure to reveal facts in the complaint and incorporated documents that link the alleged drug money in Panama to the accounts in the United States. Transcript at 31. Claimants specifically contend that "[n]o connection is made between any of the suspect Panamanian accounts and the seized domestic accounts." Omnibus Motion at 18. Claimants further state that

> The government fails to provide the illegal source of the monies allegedly traced to any of the targeted accounts. The government never establishes that any monies going into the subject accounts were drug proceeds. Although the government claims that certain accounts in Panama were utilized by traffickers, it never establishes with particularity that any of the subject accounts contain any monies from these alleged drug accounts.

Omnibus Motion at 19.

In addition, during oral argument, counsel for Claimants recited a list of perceived deficiencies in the complaint: 1) there are no facts to support Agent Panek's assertion that the accounts in Panama are connected to the eighty-eight designated accounts, i.e., the complaint fails to describe the source of the transferred funds with particularity; 2) there is no description of the exchange that produced the listed

transactions; 3) there is no allegation of the Cartel member allegedly responsible for the transfer of funds; 4) there is no accounting for the how much money may have been in the source account; 5) there is no explanation as to signatories who had control over the account; 6) there is no basis for the assumption that all the money transferred into the accounts was drug proceeds; 7) there is no accounting method; and 8) there is no information regarding the manner in which the money from the narcotics exchange was transferred to Panama and then into the domestic accounts. Transcript at 31–32.

Claimants have reason to be concerned about the government's complaint. Although designed to deprive those associated with the drug trade of their illicit gains and tools of the trade, forfeiture is nevertheless a draconian remedy, and the government has alleged only skeletal facts in the complaint that would support any legal theory of forfeiture. Claimants, however, misunderstand the government's burden of proof.[10] Of the eight items listed above, many relate to the facts a claimant must prove to rebut the government's case or to show that the claimant is an innocent owner within the meaning of 21 U.S.C. § 881(a)(6). The government must only prove probable cause to believe that the funds in the accounts are traceable to the exchange of a controlled substance, and then, the burden shifts to the claimant to show why the property should not be forfeited. Thus, at trial the government clearly must prove, among other things, the specific source of the money transferred to each account, the reason to believe that the source accounts contained only drug proceeds,[11] and the manner in which the transfers between accounts took place, in order to show probable cause for belief that the designated accounts contain traceable pro-

---

10. The Court recognizes that this Order discusses matters, such as burden of proof, ordinarily not addressed in ruling on a motion to dismiss a forfeiture action. However, as Claimants' memorandum weaves issues relating to the parties' burden of proof and other matters into its arguments for dismissal, the Court deems it appropriate to discuss some of these issues in this Order.

11. If the government cannot show that all of the funds in the source accounts were proceeds from illegal drug transactions, then there will be an issue as to the accounting procedures used to trace the drug proceeds from one account to another.

ceeds.[12] Yet, under the burden-shifting scheme employed in civil forfeiture actions, once the government has shown probable cause to believe that proceeds traceable to drug transactions have been transferred to claimant's account, the *claimant* must prove facts such as the type of exchange which produced the transfer, if the claimant hopes to rebut the government's case or invoke the innocent owner defense.

Moreover, at this stage the government need not allege in the complaint the specific source of the funds. The complaint must contain only the "requisite factual basis for its allegation that it has probable cause for forfeiture." *$38,000*, 816 F.2d at 1547. Unlike the inadequate complaints in *$38,-000* and *Property Located at 4880 S.E. Dixie Highway*, which did no more than bluntly assert that the government had probable cause for forfeiture, the complaint filed in this case contains facts that support an inference of probable cause. Viewed in its best light, the complaint and incorporated documents allege that members of the Medellin Cartel wired drug money to foreign bank accounts, including bank accounts in Panama, many of which were maintained at Banco Occidente (Panama). Then, between 1987 and 1989, $350 million of the drug profits was wired back from Panama to accounts in the United States. Some of this money was transferred into the eighty-eight designated accounts.

These facts support an assertion of probable cause. Although it would prove useful to the Claimants and the Court to allege in the complaint additional facts supporting the government's assertion that drug money was transferred to the eighty-eight accounts, and these facts certainly should be within the government's knowledge, the Court declines to interpret Supplemental Rule E(2) to require the government to allege in its complaint every aspect of the case it must prove at trial.[13]

Claimants also argue that the government does not have probable cause because the information obtained from the banks in Panama is stale. Specifically, Claimants argue that the government cannot seize any funds in the accounts that have had a zero balance after the alleged traceable proceeds were deposited into the account. As an initial matter, the Court finds that the information relied on by the government is not so outdated as to make it worthless and thus render the government's assertion of probable cause baseless. Second, although Claimants' argument clearly has merit, *see Banco Cafetero, supra,* it raises issues which should be considered at a later stage of the proceedings. The fact that the account balance has dropped to zero subsequent to the deposit of tainted funds is an element of the Claimant's defense, and the Court will consider the issue at the appropriate time in the proceedings.

### 2. Misconduct and Abuse of Process

Claimants next argue that the complaint for forfeiture should be dismissed with prejudice because of prosecutorial misconduct and abuse of process. In brief summary, the alleged misconduct consists of the following: (1) falsely characterizing account holders as "agents" of the Medellin cartel in order to permit the unlawful freezing of accounts pursuant to 21 U.S.C. § 853; (2) filing with Magistrate Turnoff and incorporating by reference into the complaint affidavits known at the time of submission to contain false allegations; (3) omitting from the application for seizure warrant that the government had been

---

12. The government also will need to show the time period in which these transactions were allegedly occurring with specificity. The Application for Seizure Warrant states that these transactions occurred between 1987 and 1989. However, several of the transfers set out in the Amended Complaint allegedly occurred in 1986.

13. In addition, the Court finds that the complaint contains enough information "to com-

mence an investigation of the facts and to frame a responsive pleading," as required by Supplemental Rule E(2). As noted previously, one of the attachments lists the date and amount of the allegedly tainted transfer into each claimant's account. This information is sufficient to allow the claimant to begin an investigation into the facts and file a responsive pleading.

forced to release most of the accounts initially frozen and that the restraining order had been partially dissolved because of a judicial finding that the government was improperly using the order to conduct civil discovery; and (4) blatantly violating the provisions of the Right to Financial Privacy Act (hereinafter "RFPA"), 12 U.S.C. § 3401 *et seq.* (1988).

In response, the government argues that these allegations are matters which are more properly raised before Judge O'Kelley in the proceeding in the Northern District of Georgia. The government also attempts to justify its conduct with respect to the RFPA by claiming that it acted in accordance with an exception to its notice provisions. Finally, the government argues that it was not, by judicial order, forced to unfreeze any accounts and that no court has held that any accounts have been illegally frozen.

■ It is well established that a court has authority to exercise its equitable or supervisory powers to remedy the willful violation of a federal statute or rule, to preserve judicial integrity, and to deter illegal conduct. *See Bank of Nova Scotia v. United States,* 487 U.S. 250, 108 S.Ct. 2369, 2373, 101 L.Ed.2d 228 (1988); *United States v. Hasting,* 461 U.S. 499, 103 S.Ct. 1974, 1978, 76 L.Ed.2d 96 (1983); *McNabb v. United States,* 318 U.S. 332, 63 S.Ct. 608, 615, 87 L.Ed. 819 (1943). Also as part of its inherent equitable powers, a court may dismiss actions for abusive litigation practices. *Televideo Systems, Inc. v. Heidenthal,* 826 F.2d 915, 916 (9th Cir.1987). Though the inherent powers doctrine is nebulous, *id.,* there are limits on the power of a court to impose the severe sanction of dismissal. Such a sanction is proper only in "extraordinary situations," *cf. United States v. Welborn,* 849 F.2d 980, 985 (5th Cir.1988) (discussing dismissal of criminal indictment); *United States v. Campagnuolo,* 592 F.2d 852, 865 (5th Cir.1979) (same), and a court exceeds the proper bounds of its power when it fails to consider whether

less extreme sanctions might maintain the integrity of the Court and deter future misconduct. *See Welborn,* 849 F.2d at 985; *see also Bank of Nova Scotia,* 108 S.Ct. at 2374.

Here, Claimants in effect invite the Court to exercise its equitable powers and dismiss the complaint with prejudice for two reasons: to punish the government for the alleged misconduct and abuse of process[14] summarized above, and to advance the purposes of the RFPA. Because the Court is unconvinced that the government has engaged in the extreme misconduct necessary to consider the sanction of dismissal, it declines this invitation.

■ This is not to say that the Court is unconcerned with many of the Claimants' allegations. First, the Court is troubled by the government's seeming attempt to use 21 U.S.C. § 853(e) as a discovery tool. However, those accounts from which the government improperly obtained discovery are not subject to forfeiture in this action. Though their absence from this proceeding does not, as the government maintains, necessarily mandate that the misconduct issue be pursued solely in the Northern District of Georgia, it does militate strongly against applying the severe sanction of dismissal of this action, because it indicates that any prejudice suffered by Claimants as a result of the alleged illegality is indirect and remote. *Cf. Bank of Nova Scotia,* 108 S.Ct. at 2378 ("[T]he District Court had no authority to dismiss the indictment on the basis of prosecutorial misconduct absent a finding that petitioners were prejudiced by such misconduct."). Indeed, dismissal with prejudice is a sanction which the Court would hesitate to impose even if the defendant accounts in this action were included in the Group 2 accounts referred to by Judge O'Kelley in his May 2, 1990 order.

■ Further, as to the contentions that government omitted information and submitted affidavits which contained allegations known to be false, the Court accepts, with caution, the government's explanation

---

14. The use of legal processes for purposes not intended by law constitutes an abuse of process. *See United States v. Tison,* 780 F.2d 1569, 1573 (11th Cir.1986) ("it is improper for the government to institute a civil action to generate discovery for a criminal case").

that it was merely making available to Magistrate Turnoff the complete record of the proceedings in the Northern District of Georgia. While some of the factual allegations may be inaccurate, there is no evidence that the government knew of their falsity at the time of their initial submission to Judge O'Kelley. In the Court's view, the government did not attempt to mislead Magistrate Turnoff; instead, its error was to incorporate by reference the largely unintelligible Panek affidavits rather than to file an updated affidavit which was both more thorough and less encumbered with irrelevant facts. *See supra,* note 8. Also, because the government has not been required by judicial order to "unfreeze" any accounts, the failure to state in the application for seizure warrant that it has been "forced" to do so cannot constitute the grave misconduct contemplated by the sanction of dismissal with prejudice.

 Though the Court is also concerned by the government's apparent violation of the RFPA,[15] dismissal with prejudice is an inappropriate remedy. Claimants correctly point out that this Court has the authority to suppress evidence obtained in willful violation of a statute or as a result of other government misconduct, *see United States v. Payner,* 447 U.S. 727, 100 S.Ct. 2439, 2446 n. 7, 65 L.Ed.2d 468 (1980) (quoting *McNabb,* 63 S.Ct. at 615), and suppres-

sion can be imposed as a remedy in forfeiture cases. *See One 1958 Plymouth Sedan v. Commonwealth of Penn.,* 380 U.S. 693, 85 S.Ct. 1246, 14 L.Ed.2d 170 (1965); *see also Straub v. Monge,* 815 F.2d 1467, 1474 (11th Cir.1987) (Hill, J., concurring) ("the exclusionary rule ... must apply in civil forfeiture proceedings."). The Court's decision not to dismiss the complaint does not preclude a future finding that evidence has been illegally obtained and that suppression is an appropriate remedy. However, Claimants cite no authority for the proposition that dismissal of the complaint is warranted, and the Court believes that if the RFPA has been violated, other less severe sanctions would effectively carry out the statute's purpose. *Cf. Bank of Nova Scotia v. United States,* 108 S.Ct. at 2374 ("deterrence is an inappropriate basis for reversal [of a conviction] where 'means more narrowly tailored to deter objectionable prosecutorial conduct are available'") (quoting *United States v. Hasting,* 461 U.S. 499, 103 S.Ct. 1974, 1979, 76 L.Ed.2d 96 (1983)); *Adolph Coors Co. v. Movement Against Racism and the Klan,* 777 F.2d 1538, 1543 (11th Cir.1985) (sanction of dismissal for discovery abuses improper if less severe sanctions would be equally effective).[16]

Accordingly, it is hereby ORDERED and ADJUDGED that Claimants' Motions to

---

**15.** The RFPA prohibits the government from obtaining bank records without prior authorization of the bank customer. *See* 12 U.S.C. §§ 3402(1) (1988). One exception to this prohibition applies "when financial records are sought by a Government authority under the Federal Rules of Civil or Criminal Procedure or comparable rules of other courts in connection with litigation to which the Government authority and the customer are parties." 12 U.S.C. § 3413(e). Without seeking prior authorization, the government certified to various banks that it had complied with the RFPA. At the time these certificates of compliance were issued, claimants were not parties to the proceeding in the Northern District of Georgia.

**16.** The Fifth Circuit has implicitly suggested that government misconduct can be so outrageous as to make forfeiture a violation of due process. *See United States v. One Boeing 707 Aircraft,* 750 F.2d 1280, 1284 (5th Cir.1985) ("[A]t issue is whether law enforcement conduct fell below societal standards so that the public would regard such conduct an abuse of government power"), *cert. denied, Servotech Inter. Establishment*

*v. United States,* 471 U.S. 1055, 105 S.Ct. 2117, 85 L.Ed.2d 481 (1985); *cf. id.* at n. 8 ("[W]e may some day be presented with a situation in which the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction") (quoting *United States v. Russell,* 411 U.S. 423, 93 S.Ct. 1637, 1643, 36 L.Ed.2d 366 (1973)). *But see id.* at 1286 ("[W]e expressly pretermit as an issue whether government misconduct, if present, would affect forfeiture."). Outrageous conduct turns upon the totality of the circumstances, and a due process violation occurs only in "the rarest and most outrageous circumstances." *United States v. One Boeing 707 Aircraft,* 750 F.2d at 1284 (quoting *United States v. Tobias,* 662 F.2d 381 (5th Cir.1981)).

The Court cannot hold that there has occurred a due process violation mandating dismissal of the complaint. The Court need not speculate how egregious the government's conduct would have to be before the due process clause would be violated. It is sufficient to conclude that, in this case, the government's actions simply are

Dismiss are DENIED. Claimants governed by this Omnibus Order shall file all appropriate responsive pleadings within twenty (20) days from the entry date of this Order. The Court intends to proceed in this case on an expedited basis, and it hereby schedules a status conference for July 6, 1990 at 9:30 a.m. to address the most efficient and orderly manner for bringing these cases to issue and disposition. The government and lead counsel for Claimants shall file, on or before July 2, 1990, a joint report suggesting procedures for facilitating the prompt resolution of this case.

It is further ORDERED and AD-JUDGED that the status quo shall be preserved with respect to all designated accounts. Pending further Order of the Court, the accounts shall remain at the financial institution where they were seized, and the government shall not take physical possession of the monies held therein.

It is further ORDERED and AD-JUDGED that lead counsel for Claimants shall serve a copy of this Order upon all counsel of record.

DONE and ORDERED.

not so outrageous as to warrant a dismissal with prejudice.