**UNITED STATES of America, Plaintiff,**

v.

**EIGHTY–EIGHT (88) DESIGNATED ACCOUNTS CONTAINING MONIES TRACEABLE TO EXCHANGES FOR CONTROLLED SUBSTANCES, Defendant.**

No. 90–1203–Civ.

United States District Court,
S.D. Florida.

Jan. 24, 1992.

## I. BACKGROUND

The facts leading up to the filing of this action are set forth in *United States v. Eighty–Eighty Designated Accounts*, 740 F.Supp. 842 (S.D.Fla.1990). In that opinion the Court concluded that the Government's allegations of probable cause for forfeiture in the amended complaint were sufficient to withstand a motion to dismiss. The Court did not determine that probable cause existed nor was an evidentiary hearing held. Brief informal discovery and the application of the lowest intermediate balance rule announced in *United States v. Banco Cafetero Panama*, 797 F.2d 1154 (2d Cir.1986), led the Government to release the funds. On July 31, 1990, approximately two and one-half months after the filing of the amended complaint, the Government agreed to release $106,841.79 of the $108,416.12 it had seized in connection with the Montoyas' account, referenced in paragraph 6(Z) of the amended complaint. On April 4, 1991, the Court entered an Order of Dismissal with Prejudice as to the account.

The Montoyas then moved for attorney's fees under EAJA on the grounds that the Government's position in pursuing this forfeiture action with respect to the Montoyas' account was not substantially justified and there are no special circumstances which would make the award of attorney's fees under EAJA unjust.

B.B. Allen, Asst. U.S. Atty., Miami, Fla., for plaintiff.

Alan S. Fine, Miami, Fla., for claimant Montoya.

## ORDER AWARDING ATTORNEY'S FEES

NESBITT, District Judge.

This Cause comes before the Court upon the application of Claimants Hernan Montoya Franco and Socorro de Montoya, ("Montoyas"), for attorney's fees, expenses, and costs pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412.

## II. ANALYSIS

EAJA permits any court having jurisdiction to award attorney's fees and costs to "the prevailing party in any civil action brought by or against the United States." 28 U.S.C. § 2412(b). The statute sets forth four requirements that must be met before a party can recover: 1) if the party is an individual, his net worth must not have exceeded $2,000,000 at the time the civil action was filed; 2) the party "prevailed" in the action; 3) the position of the United States was not substantially justified; and 4) there are no special circumstances that render the award unjust. *Id.* The parties do not dispute that EAJA con-

trols. The Court must find whether all four prongs under EAJA have been met.

## A. *The Claimants' Net Worth*

■ The Government disputes that the Montoyas' net worth was less than $2,000,000 at the time the complaint was filed. The Montoyas, however, submitted a verified declaration that indicates that their net worth was less than the statutory maximum at the time the action was filed. In addition, they voluntarily provided copies of their Colombian tax returns, as well as a supplemental verified declaration indicating that as of June 7, 1990, their net worth was the equivalent of $544,939.86 in U.S. dollars. The Government has failed to present any evidence that refutes the Montoyas' declarations and tax statements.

Nevertheless, the Government contends that it was unable to depose the Montoyas as to their net worth, and that because several hundred thousand dollars were in the account, it is "reasonable to assume" the Montoyas' net worth exceeded the statutory limit. Thus, the Government argues, the Montoyas' refusal to be deposed about their financial condition should bar them from seeking fees under EAJA. The Government, however, did not to respond to the Montoyas' notice of filing, dated July 29, 1991, which contained the Montoyas's Colombian tax returns and other supplemental declarations as to their net worth. Nor has the Government cited any authority that supports its position that discovery as to net worth is necessary before the Court can order an award under EAJA.

As the Government has failed to produce any evidence that the Montoyas' net worth exceeds $2,000,000, the Court finds that the documentation provided is sufficiently reliable to conclude that the Montoyas are entitled to seek attorney's fees under EAJA. As stated by the Ninth Circuit, "some informality of proof is appropriate" on the issue of net worth as "a 'request for attorney's fees should not result in a second major litigation.'" *United States v. 88.88 Acres of Land,* 907 F.2d 106, 108 (9th Cir.1990) (quoting *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)). Similar types of documentation were found adequate in *88.88 Acres of Land, supra,* and *American Pacific Concrete Pipe Co. v. NLRB,* 788 F.2d 586 (9th Cir.1986). The Government has not presented any basis to refute the accuracy of the Claimants' representations and tax returns other than it believes the Montoyas' declarations are untrustworthy. Accordingly, the Court finds that the Montoyas have standing to seek attorney's fees under 28 U.S.C. § 2412.

## B. *The Claimants as Prevailing Party*

■ The parties stipulate that the Montoyas were the "prevailing party" in this litigation as they "received substantially the relief requested or [have] been successful on the central issue." *See United States v. Certain Property Located at 4800 S.E. Dixie Highway,* 628 F.Supp. 1467, 1469 (S.D.Fla.1986), *rev'd on other ground,* 838 F.2d 1558 (11th Cir.1988).

## C. *Substantial Justification*

■ The pivotal issue is whether the Government's position with respect to the Montoyas' account was substantially justified. The parties agree that the Government bears the burden of proving that its position was "substantially justified" under EAJA. *United States v. Property Located at 4880 S.E. Dixie Highway,* 838 F.2d 1558, 1560 (11th Cir.1988) ("civil litigants who prevail against the United States are entitled to attorneys fees and costs if the United States fails to demonstrate that its 'position' was 'substantially justified.'"). Moreover, the parties do not dispute that a position that is "substantially justified" must have "a reasonable basis both in law and in fact." *Pierce v. Underwood,* 487 U.S. 552, 108 S.Ct. 2541, 2550, 101 L.Ed.2d 490 (1988). The Government need not have been justified to a "high degree," but it must have been justified to a degree that could satisfy a reasonable person. *Bay Area Peace Navy v. United States,* 914 F.2d 1224, 1230 (9th Cir.1990).

The District Court for the District of Hawaii recently further noted that:

The government's 'position' includes both its underlying action and the litigation posture it adopted while defending the validity of that action in court. 28 U.S.C. § 2412(d)(2)(D); *Abela v. Gustafson,* 888 F.2d 1258, 1264 (9th Cir.1989). The government has the burden of proving that both its underlying agency action and its litigation position were substantially justified. *Kali v. Bowen,* 854 F.2d 329, 332 (9th Cir.1988). The government does not meet its burden of proving substantial justification merely by adducing 'some evidence' in support of its position. *United States v. 163.25 Acres of Land,* 663 F.Supp. 1119, 1120 (W.D.Ky.1987). *United States v. All Monies ($637,944.57) in Account No. 29–0101–62 in the name of Sami Jabra Abusada, etc.,* Civil No. 89–00386 DAE, at 15, 1991 WL 331484 (D.Hi., Sept. 11, 1991).

The Montoyas argue that the Government's position was not justified in law and fact for two reasons. First, the Montoyas assert that the Government did not apply the "lowest intermediate balance test" prior to seizure, as suggested in *United States v. Banco Cafetero Panama,* 797 F.2d 1154 (2d Cir.1986). Secondly, the Government had no probable cause for seizing over eighty-eight percent of the account, or $94,765.12 of the $108,416.12 seized.

a. The Lowest Intermediate Balance Test

As to their first argument, the Montoyas rely on *Banco Cafetero* to assert that applying the "lowest intermediate balance rule" is part and parcel of probable cause. In *Banco Cafetero,* Second Circuit stated that:

> once the Government has shown probable cause to believe that a person has sold drugs and has deposited the proceeds of the drug sale into a bank account, there will be probable cause to believe that the bank account contains 'traceable proceeds' of the sale (if the balance has not fallen below the amount of the deposit)....

*Id.* at 1160.

The Montoyas argue that probable cause only exists after the Government applies the "lowest intermediate balance test," and shows that the balance is greater than the traceable deposits. Thus, the Montoyas contend, that because the Government did not apply the test prior to seizure in this case, there was no probable cause at the time of seizure. The Montoyas conclude that without such probable cause, the seizure could not have been substantially justified.

In response, the Government asserts that an application of the "lowest intermediate balance test" is not required prior to seizure. The Government notes that it reviewed the bank accounts, together with records voluntarily made available by the Montoyas, after seizure and then applied the "lowest intermediate balance test" pursuant to the Second Circuit analysis. After the review, the Government promptly stipulated to the distribution of substantially all of the funds shortly after the initial seizure.

■ *Banco Cafetero* recites one method of determining the amount of tainted funds in a seized bank account: the Government must apply the intermediate balance test sometime between seizure and its showing of probable cause. Although *Banco Cafetero* is not controlling in the Eleventh Circuit, the law is settled that once the Government establishes probable cause that a particular account contains specific proceeds traceable to illegal narcotic transactions, the burden shifts to the claimant to show that no portion of the account is traceable to narcotics proceeds. The Government bears the initial burden of demonstrating that a precise amount of proceeds from an illegal activity was deposited in a specific bank account which also contained untainted funds. Once probable cause is shown, the burden shifts to the claimant to show that the property is not subject to forfeiture. *See* 19 U.S.C. § 1615 (governing the burden of proof in forfeiture cases).

The Eastern District of New York recently noted in a case with analogous facts that the burden shifting scheme set forth in *Banco Cafetero* is:

also sound as a matter of logic. The information with regard to the defendant' deposits, withdrawals and contents of their bank account is peculiarly within the knowledge and control of the defendants. This information is necessary to determine the amount of the fruits of the illegal activity deposited in the account. The burden, therefore, should be properly borne by the party having the required knowledge and seeking an exemption from forfeiture, once probable cause is demonstrated.

*United States v. William Savran & Assoc.,* 755 F.Supp. 1165, 1184 (E.D.N.Y. 1991).

Here, the Government never had an opportunity to prove up probable cause as no evidentiary hearing was held. The Government conceded at oral argument, however, that it was not prejudiced by the absence of an evidentiary hearing in this case. Although the Court is inclined to agree with the Government that the "lowest intermediate balance test" is not required prior to seizure because information regarding bank accounts is peculiarly within the control of a defendant prior to seizure making it impracticable for the Government to apply the test before seizure and discovery, the Court finds it need not resolve the issue as the Montoyas' second argument clearly has merit.

### b. Disproportional Seizure

 When the Government filed its amended complaint, it alleged that $43,651.00 of the $108,416.12 seized in the account was "traceable proceeds." Subsequently, the Court ordered the Government to provide all Claimants with a verified showing of probable cause. *See* Case Management Order No. 1, July 10, 1990. In response to this Order, the Government produced evidence of probable cause with respect to $13,651.00 in the Montoyas' account, but failed to produce any evidence with respect to the largest tainted transfer of $30,000.00 alleged in the amended complaint. Thus, the Government had probable cause to believe that less than thirteen percent of the account was subject to forfeiture. The Court's Omnibus Memoran-

dum Order on Claimants' motion to dismiss of July 15, 1990, published at 740 F.Supp. 842 (S.D.Fla.1990), specifically declined at that stage of the proceedings to address Claimants' "proportionality argument," *i.e.,* that the amounts seized by the Government were grossly disproportionate to the amounts identified in the complaint as "traceable proceeds." 740 F.Supp. at 845 n. 6. The Court's silence concerning the merits of Claimants' contentions at that time does not diminish the validity of Montoyas' argument about disproportionality. As the First Circuit has stated, "[w]e do not believe that forfeitability spreads like a disease from one infected [piece of the property] to the entire ... property.... After all, only the actual proceeds of drug transactions are forfeitable." *United States v. Pole No. 3172, Hopkinton,* 852 F.2d 636 (1st Cir.1988).

The Government has no explanation for the vast discrepancy between the monies actually seized and the Government's statement of probable cause, but rather, argues that the Court cannot now find its position lacked substantial justification because the Court found probable cause for the seizure in the Omnibus Memorandum Order of July 15, 1990. The Government relies on *United States v. B & M Used Cars,* 860 F.2d 121 (4th Cir.1988) to support its position. In *B & M,* the Fourth Circuit held that the district court's determination that the Government's position lacked substantial justification was incomprehensible "when [the district court] had previously acknowledged that the government had satisfied the initial evidentiary burden of a full-scale forfeiture trial." 860 F.2d at 124.

There is a fundamental distinction, however, between *B & M* and the present case. In *B & M,* the district court held an evidentiary hearing to determine the existence of probable cause sufficient to satisfy the government's initial evidentiary burden at trial. In this case no such evidentiary hearing was held. In fact, in ruling on the motion to dismiss, the Court stated that "[it] declines to interpret Supplemental Rule E(2) to require the Government to allege in its complaint every aspect of the case it must prove at trial." 740 F.Supp. at

849 (footnote omitted). This conclusion contravenes the Government's position that the Court found that the Government had sustained the initial evidentiary burden that it must prove at trial. The Order clearly states that the Government must prove facts not alleged in the complaint to succeed in the forfeiture action. 740 F.Supp. at 848–49.

The Court finds that the Government lacked substantial justification for its position with respect to the Montoyas' account because it only had probable cause to believe that less than thirteen percent of the total account was subject to forfeiture. The Government's position is not substantially justified simply because it adduces "some evidence" supporting its position. *Russell v. Heckler*, 814 F.2d 148, 153 (3rd Cir.1987). Not only did the Government fail to show that it had probable cause to forfeit the entire account, but was unable to go forth with the facts alleged in the amended complaint. The Court, therefore, finds that under the circumstances of this case, the Government has failed to carry its burden of showing that its position with respect to the entire account was substantially justified.

### D. *Special Circumstances*

 The district court may refuse to award fees and costs if "special circumstances" make the award unjust. 28 U.S.C. § 2412(d)(1)(A). The Government argues that such special circumstances exist. The Government contends that since this case was the first case of such dimensions to involve tracing drug proceeds through the "gray market" or "parallel market," "it could not reasonably have proceeded otherwise than it did with any hope of finding the illegal proceeds sought to be forfeit." This is an unconvincing argument. The Court cannot agree that the Government's inability to "find the illegal proceeds sought to be forfeit" constitutes special circumstances making an award unjust. The Government cannot justify its failure to comply with the minimal burden of proof imposed in forfeiture actions by merely asserting that the United States seized an unprecedented number of ac-

counts of uncertain legitimacy. Moreover, no special circumstances exist where the Government alleges "an extraordinary series of events unlikely to reoccur." *Bruland v. Howerton*, 742 F.Supp. 629, 635 (S.D.Fla.1990).

### E. *Elements and Amounts of Award*

The Montoyas have requested a judgment for costs, expenses, and attorney's fees in the amount of $33,721.85, based on an upward departure from the statutory cap on attorney's fees of $75 per hour. 28 U.S.C. § 2412(d)(2)(A)(ii). Without the upward departure, the Montoyas request fees, expenses, and costs in the amount of $18,623.85. The Government has not disputed any aspect of the Montoyas' award calculation except the Montoyas' entitlement to an upward departure from the standard fee of $75 per hour. Accordingly, the Court addresses only this aspect of the fee award.

The United States Supreme Court has set forth factors that must be considered when evaluating a request for an upward departure from the $75 per hour cap:

> distinctive knowledge or specialized skill needful for the litigation in question—as opposed to an extraordinary level of general lawyerly knowledge and ability in all litigation. Examples of the former would be an identifiable practice specialty such as patent law, or knowledge of foreign law or language. Where such qualifications are necessary and can be obtained only at rates in excess of the $75.00 cap, reimbursement above that limit is allowed.

*Pierce v. Underwood*, 108 S.Ct. at 2554. Counsel for the Montoyas has pointed to two reasons for an upward departure: 1) that his knowledge of Spanish was necessary to the case, and 2) that after the Supreme Court's decision in *Caplin v. Drysdale*, 491 U.S. 617, 109 S.Ct. 2646, 105 L.Ed.2d 528 (1989), civil and criminal forfeiture actions present unique problems for claimants' counsel. *See United States v. Certain Real Property Located at 2323 Charms Road, Milford Township*, 728

F.Supp. 1326, 1329–30 (E.D.Mich.1990). The Montoyas have submitted the Declaration of Alan S. Fine, Esq. and Roberto Martinez, Esq. to support their request for an upward departure.

The Government argues that with respect to the Montoyas, this litigation never reached the stage where counsel for the Montoyas had to demonstrate any particular expertise which would make an upward departure appropriate. The Government cites *United States v. Willens*, 731 F.Supp. 1579 (S.D.Fla.1990), to support its position. In that case, Judge Spellman found that although counsel demonstrated that he had special expertise in a complex area of law, counsel had failed to show that the skill was necessary in that case in light of the legal questions presented and the brief length of the trial. *Id.* at 1581.

 In view of the prompt release of the Montoyas' funds pursuant to the Government's voluntary application of the lowest intermediate balance test set forth in *Banco Cafetero*, the Court finds that the expertise of counsel for the Montoyas was not a critical aspect of the litigation. In Plaintiff's Reply Memorandum of June 6, 1990, the Government agreed to apply the analysis of *Banco Cafetero*, which led to the release of all but $1,574.33 of the monies in the account. Given these circumstances, the Court finds that no upward departure is justified. Thus, it is

ORDERED and ADJUDGED that the Montoyas' application for attorney's fees, expenses, and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412 is GRANTED in the amount of $18,623.85.

DONE and ORDERED.