CARROLL, Judge.
The appellee bank sued Trio Construction, Inc., and its officers Burton and Belson on *119 a promissory note for $25,000 dated January 27, 1960.[1] The note evidenced a loan by the hank to the corporation. The two officers named above were indorsers on the note. The appellant Harry M. Burt was a party defendant. In a separate count, the bank sought recovery against him on a written guaranty he made on May 5, 1958. He guaranteed the notes of the corporation to the bank “aggregating a sum not to exceed $50,000” and renewals thereof.[2]
By answer Burt claimed the guaranty was ■discharged, because the aggregate of $50,000 had been loaned and repaid before the making of the loan in question, and because before making the loan the bank had notified Burt that it would not make any “future accommodations” to the borrowers unless he met additional guaranty requirements, that he had not acceded thereto, and that the loan for which the note sued upon was given was made thereafter without his knowledge and without reference to the guaranty. Attached to the answer was a letter dated April 22, 1959, from the bank to Burt by which the bank informed him that further loans to Trio Construction, Inc., would not be forthcoming unless Burt should furnish certain security (in addition to his guaranty) or “a certified financial statement by a reputable Certified Public Accountant of Mr. Burt’s assets and liabilities in detail.[3]”
*120 Both parties moved for summary judgment. Burt’s motion was denied. The plaintiff’s motion was granted and summary judgment was entered against Burt. The evidentiary matter submitted with the motions disclosed that Burt had not complied with the request of' the bank in its letter of April 22, 1959; that in spite of the bank’s statement to him in that letter that “future accommodations” would not be extended to the corporation except on the conditions set out in the letter, the bank loaned the corporation $25,000 upon obtaining a current financial statement from the corporation and personal statements from the officers-indorsers, Burton and Belson; but that Burt was not informed of the loan, and it was made without his knowledge.
Burt has appealed from the adverse summary judgment. He argues that the guaranty was discharged for the two reasons set out in his answer; that the conduct of the bank estops it from contending the guaranty continued; and that the loan was made on the credit of the borrower.
Although its language would not readily lead one to believe that it was continuing, the parties, through their actions,[4] appear to have interpreted the guaranty of “notes aggregating a sum not to exceed $50,000” as a continuing one. Compare Frell v. Dumont-Florida, Inc., Fla.App.1959, 114 So.2d 311. We need not, however, decide whether the $50,000 limitation fixed the maximum of the guarantor’s undertaking without limit as to the amount of loans made, or whether the guaranty was intended to apply only to the first $50,000 loaned or advanced.
The action of the bank, through its letter of April 22, 1959, operated to terminate the guaranty. By that letter, the bank notified Burt that no further credit would be 'extended to the corporation unless the guaranty was strengthened in the respects required by the bank, and it is undisputed that the guarantor refused to comply with the bank’s request. Two months later the corporation liquidated its debt in full. Thereafter, in spite of having formally notified the guarantor that it was unwilling to continue extending credit to the corporation on the guaranty as it had been in effect and unless the guarantor met further conditions, the loan involved here was made upon obtaining financial statements from the corporation and its officers without communicating with the guarantor. In 38 C.J.S. Guaranty § 68, it is said: “ * * * the guarantor is discharged from further liability where the guarantee abandons the guaranty with an intention to rely thereon no longer, and in such a case the guarantor’s liability cannot be revived by any subsequent *121 arrangement made without his consent between the guarantee and the principal.”
The summary judgment which is appealed from, rendered in favor of the plaintiff against the defendant-appellant Harry M. Burt is reversed, and the cause is remanded with directions to the trial court to enter a summary judgment in favor of the defendant Harry M. Burt.
Reversed and remanded.

. The note sued upon is a renewal of a note executed on July 31, 1959.

. “Know all Men by These Presents that whereas the Community National Bank of Bal Harbour, Miami Beach, Florida, at my special instance and request has agreed to loan to Trio Construction, Inc., a Florida corporation, under the laws of the State of Florida, and having its principal place of business in Miami Beach, Dade County, Florida, certain sums of money aggregating a principal sum not to exceed Fifty Thousand ($50,-000.00) Dollars, and
“Whereas, the said Bank will advance said monies as the corporation may need and require it and accept from said corporation for such loan, its promissory notes with interest thereon, said promissory notes to be payable at various times, and
“Whereas, said notes are to be signed by the proper officers of the corporation; namely A. Craig Burton, President, and Morris Belson, Secretary-Treasurer, and said notes will bear their proper personal endorsement.
“Now, Therefore, I, the undersigned, Harry M. Burt, of Bay Harbor, Miami Beach, Florida, hereby covenant and agree with the said Community National Bank to guaranty, and I do hereby guarantee the full and prompt payment of all the said notes aggregating a sum not to exceed Fifty Thousand ($50,000.-00) Dollars with interest thereon at the rate of 6% per cent per annum, and of any and all renewals thereof, or any of them, when the same shall become due and payable, until all of said loans and notes and any and all renewals thereof are fully paid and discharged.
“In Witness Whereof, I have hereunto set my hand and seal in the City of Miami Beach, County of Dade, and State of Florida, this 5 day of May, 1958.”

. The letter from the bank to Burt dated April 22, 1959, was as follows;
“Mr. Harry M. Burt Coral Sea Towers 10800 W. Bay Harbor Drive Miami Beach 54, Florida “Dear Mr. Burt:
“Trio Construction
“Your letter of April 21 was received this morning. As you have stated, we have extended credit on an unsecured basis to Trio Construction, Inc. since January of 1957. Since May 5, 1958, such loans aggregating a principal sum not to exceed $50,000 have been guaranteed by you personally in accordance with a Guaranty signed by you. On May 15, 1959, Trio Construction, Inc. will have been, on our books continuously for a twelve month period.
“You mention in your letter that it is a custom of this bank to have such loans paid off once a year and that Trio Construction, Inc. will, therefore, pay off their loans on that date. We wish to point out that customers borrowing on an unsecured basis are expected to stay out of our debt for three months out of each twelve. This commitment applies only to the best rated creditors. This requirement is not the policy of the Community National Bank alone, but is a requirement used by various banking authorities and investigative bodies.
“On May 15, 1959 we expect the Trio Construction, Inc. loans to be paid in full. After that, there are two avenues open for future accommodation. One *120 method that would permit Trio Construction, Inc. to come back on our books immediately after May 15 would be to have Mr. Burt secure such loans by assigning satisfactory notes receivable to us and authorizing us to make the necessary collections. This item appears to be the only quick answer to the needs of Trio Construction, Inc.
“The alternative method, under which we would consider future accommodations, would be on the basis of a certified financial statement by a reputable Certified Public Accountant of Mr. Burt’s assets and liabilities in detail. In addition, we would require current statements of Trio Construction, Inc. as well as personal statements of Mr. Burton and Mr. Belson, President and Secretary-Treasurer respectively. If such statements are submitted to us in satisfae-tory form, we would consider granting accommodations on or after July 15, 1959. If the loan wore made under this second method, it will be understood that it should be off our books for three months out of each twelve and that we would require satisfactory statements each six months.
“Very truly yours,
“s/ J.J. MacCallum
“Executive Vice President.”

. The loan practice involving the guaranty was in effect for upwards of a year. The total or aggregate of the loans made to the corporation over that period was well beyond $50,000, but at no one time exceeded that figure. A communication from Burt to the bank just before it sent him the April 22, 1959, letter reveals that Burt considered the guaranty was operative up to that time.