**COMMONWEALTH NATIONAL BANK, Plaintiff,**

v.

**UNITED STATES of America; Department of Internal Revenue Treasury Department; and Eddie C. Cooley, Defendants.**

**Civ. A. No. CA 3–82–1635–G.**

United States District Court,
N.D. Texas,
Dallas Division.

Sept. 23, 1983.

Michael M. Gibson, William W. Guild, Louise P. Hytken, Tax Div., Dept. of Jus-

tice, Dallas, Tex., James A. Rolfe, U.S. Atty., Fort Worth, Tex., for defendants.

Turner, Hitchins, McInerney, Webb, Hartnett & Strother by John W. Hicks, Jr., Dallas, Tex., for plaintiff.

## MEMORANDUM ORDER

FISH, District Judge.

Plaintiff Commonwealth National Bank ("the Bank") alleges in this action that the United States, through the Internal Revenue Service ("IRS"), wrongfully levied upon certain real property. The Bank seeks return of the property. The United States and the Bank have each moved for summary judgment.

26 U.S.C. § 7426, which authorizes a civil action to redress a wrongful tax levy, provides that the assessment of tax upon which the interest or lien of the United States is based shall be conclusively presumed valid for purposes of such an adjudication. Consequently, the only issue in this action is whether the tax lien of the United States against the property is superior to the interest acquired by the Bank at a non-judicial foreclosure sale. Resolution of this issue is solely a question of Texas homestead law, for the facts are not in dispute.

### Undisputed Facts

Both the Bank and the United States agree that the taxpayers involved, E.S. White, Jr. and Marilyn White, acquired during marriage a house and lot located at 9023 Coral Cove, Dallas, Texas. Marilyn White currently resides there with her minor son, as she has since 1976, and claims it as her homestead. Some time after acquisition of this property, the Whites experienced financial and marital difficulties. In addition to other outstanding debts, the Whites by January of 1980 owed the Bank a total of more than $82,000 on 15 loans, most of them secured by business and personal property.

On February 7, 1980, while the couple was still married, E.S. White, Jr. executed a deed of trust on the Coral Cove property

to the Bank, securing payment of a debt of approximately $87,000.[1] The wife did not join in the execution of this instrument.[2] Shortly afterward, on February 24, 1980, the couple divorced. The divorce decree incorporated an agreement of the spouses purporting to effect a property settlement. Under the agreement, E.S. White, Jr. was to put the residence up for sale and apply the proceeds of such sale to certain community debts assumed by him. Marilyn retained the right to live at the residence until its sale and agreed to make the monthly mortgage payments in the interim.

In May and June, 1980 the IRS assessed additional income tax liability against E.S. White, Jr. and Marilyn White for 1977 and 1978, respectively, and on June 29, 1981, the government filed a notice of federal tax lien with respect to these assessments. In April of 1982, the IRS seized the Coral Cove residence, which belonged to both Whites but was occupied by that time only by Marilyn, her son, and a stepson. Upon Marilyn's request for additional time to satisfy the tax assessment, the revenue officer gave her a grace period ending June 2, 1982 before the house would be scheduled for sale.

During the next few months Marilyn failed to satisfy the assessment, but on June 1, 1982, before the IRS could schedule sale of the house, the Bank held a non-judicial sale of the property pursuant to the terms of the deed of trust executed by E.S., Jr.[3] At that sale, the Bank bid in the property for the sum of $30,000, which it now describes as a credit on the outstanding community indebtedness owed the Bank by both spouses.[4] The following day the Bank's sale came to the attention of the IRS. When the IRS found no judgment lien in favor of the Bank, but only the deed of trust signed by E.S. White, Jr., it scheduled a public auction to be held July 12, 1982. At the appointed hour, however, the revenue officer conducting the sale was served with a temporary restraining order from a Texas district court. Since then the auction has been postponed pending resolution of this action. Marilyn and the children have continued to live in the residence.

### Texas Homestead Law

Protection of the homestead is a fundamental policy of Texas law. A homestead which is community property may not be alienated without the consent of both spouses, and may not be encumbered by liens or mortgages other than for purchase money, property tax and materialmen's liens. Texas Constitution, Art. 16 § 50. In this case only E.S. White, Jr. executed the deed of trust in favor of the Bank; Marilyn did not. Moreover, the deed of trust was not given in exchange for purchase money, for improvements or to pay property tax. Therefore the deed of trust is invalid.[5]

The Bank contends that even though the residence may have been community property on the date its deed of trust was executed, the date of acknowledgement, which occurred after the divorce, should nevertheless control. Under Texas law, however, the validity of a deed of trust must be tested as of the date of execution. *Pappas v. Gounaris*, 158 Tex. 355, 311 S.W.2d 644, 647 (1958). The fortu-

---

1. E.S. White acknowledged the instrument on March 7, 1980, and the Bank filed it of record on March 10, 1980.

2. Marilyn White is the holder of record title to this residence, although neither the Bank nor the United States contests its character as community property prior to the Whites' divorce.

3. The Bank gave the required statutory notice of the impending non-judicial sale by letter dated May 5, 1982 and received by the IRS the following day.

4. Whether the Bank refers to the community debt of $82,196.67 for 15 individual loans or the promissory note of $87,171.14 is unclear.

5. "No mortgage, trust deed, or other lien on the homestead shall ever be valid, except for the purchase money therefor, or improvements made thereon ... whether such mortgage, or trust deed ... shall have been created by the owner alone, or together with his or her spouse ...."
Texas Constitution, Art. 16 § 50.

ity that the Whites divorced after the execution of the deed of trust by the husband does not convert that void instrument into a valid one. Only the date of execution is relevant, not the date of acknowledgement or filing. *See Lewis v. Brown*, 321 S.W.2d 313, 317 (Tex.Civ.App.—Fort Worth 1959, writ ref'd n.r.e.).

■ The Bank next argues that the United States lacks standing to assert that its deed of trust is invalid, because to do so the government must rely on the homestead claim of another. It is well settled, however, that a void instrument has no effect, even as to persons not parties to it, and that one whose rights are affected by an instrument may assert the invalidity of that instrument under Texas homestead law. *See McGahey v. Ford*, 563 S.W.2d 857, 861 (Tex.Civ.App.—Fort Worth 1978, writ ref'd n.r.e.).

■ Next, the Bank claims that even if the government has standing to assert homestead rights, the divorce decree was intended to award E.S. White, Jr. title to the property, for it gave him the power to sell the house, and the power to sell is tantamount to the power to mortgage. This argument ignores the fact that E.S., Jr. executed the deed of trust before the court approved the terms of the agreement and incorporated it into the decree. The property agreement could not have resurrected a void instrument.

■ Furthermore, a careful reading of the agreement discloses that although E.S., Jr. was to sell the property and apply the proceeds toward numerous community debts, including those to the Bank, he was not awarded title to the property. The agreement provides specifically that "All community property not listed on any attached schedule shall be owned by Husband and Wife equally as co-tenants." The attached schedules do not list the Coral Cove property. Therefore, only after the date of the divorce decree could E.S., Jr.

have encumbered the property, and then only his interest, which by then was non-possessory. Homestead law renders void the deed of trust which E.S., Jr. executed prior to the divorce decree. As a consequence, the Bank is entitled to no interest whatsoever in the property.[6]

*Conclusion*

■ Since E.S. White, Jr. and Marilyn White are jointly liable for these taxes, the federal tax lien attached to the property when the lien was filed on June 29, 1981. Despite the Whites' homestead rights under Texas law, the United States is permitted to pursue administrative sale of the property under federal law. See 26 U.S.C. § 6334(c); *U.S. v. Rodgers*, —— U.S. ——, 103 S.Ct. 2132, 76 L.Ed.2d 236 (1983).

Accordingly, the motion of the defendant United States for summary judgment is GRANTED. Plaintiff's motion for summary judgment is DENIED.

---

**6.** That the deed of trust is void does not prevent the Bank from seeking a judgment on the promissory note nor on the Whites' numerous debts to the bank. See *Pappas v. Gounaris, supra* at 648.