**PANASONIC COMPANY, DIVISION OF MATSUSHITA ELECTRIC CORP. OF AMERICA, Individually and as Successor to Panasonic West, Inc., Plaintiff–Appellant,**

v.

**Julius ZINN, Defendant–Appellee.**

**No. 89–2168.**

United States Court of Appeals, Fifth Circuit.

June 25, 1990.

William J. Dyer, Morton L. Susman, Mark D. Manela, Mark G. Lazarz, Weil, Gotshal & Manges, Houston, Tex., for plaintiff-appellant.

Eileen K. Wilson, Carol S. Vance, Bracewell & Patterson, Houston, Tex., for defendant-appellee.

Before REAVLEY, JONES and DUHÉ, Circuit Judges.

REAVLEY, Circuit Judge:

Appellant Panasonic Company ("Panasonic") brought this claim to recover on a continuing guaranty executed by appellee Julius Zinn. The district court denied Panasonic's motion for summary judgment and granted Zinn's cross motion for summary judgment on the grounds that the guaranty was void as a violation of the Texas Constitution and that Panasonic had repudiated the guaranty. There being no genuine issue of material fact and Panasonic being entitled to judgment as a matter of law, we reverse and render as to liability and remand the case for a determination of damages.

I.

In 1969, appellee Julius Zinn formed a company, Electronic Centers, Inc. ("ECI"),[1] to sell electronics equipment. Zinn approached appellant Panasonic about marketing its products. As a part of the agreement reached by the parties, Zinn signed a continuing, unconditional personal guaranty by which he promised to pay any and all indebtedness of ECI to Panasonic.[2]

---

1. Custom Hi–Fi, Inc., (later renamed Custom Hi–Fi Discount Centers, Inc.) also sold electronics products. The relationship between ECI and Custom Hi–Fi is not entirely clear. Zinn contends that ECI is the parent company of Custom Hi–Fi but that the two were separate corporations. When Custom Hi–Fi filed for bankruptcy in 1983, the style of its filing was "Custom Hi–Fi Discount Centers, Inc., a/k/a Electronic Cen-

ters, Inc." For purposes of this opinion, we will refer to these corporations as ECI, recognizing that by the terms of the guaranty Zinn promised to pay the debt of Electronic Centers, Inc.

2. As appellants' concede in their brief, "[t]he guaranty is addressed to 'Panasonic–Dallas.' Because some of the inventory sold to ECI by Panasonic was shipped from Panasonic West,

The guaranty provided that it would remain in force until Zinn gave written notice to Panasonic. The guaranty also provided that Zinn waived the "benefit of all Homestead Exemption laws."

From 1969 until 1973, Panasonic made sales to ECI on credit. In 1973 Panasonic stopped selling to ECI. At that time, ECI's account was current. From 1973 until 1977, Panasonic and ECI discussed doing business, but no sales were made to ECI. In late 1977, after reviewing ECI's financial position and issuing a new account number, Panasonic resumed sales to ECI.

ECI became delinquent to Panasonic and other creditors and, in 1982, ECI's debt was restructured pursuant to a written contract titled "Composition/Extension Agreement" ("Extension Agreement"). Zinn executed a "Rider to Composition/Extension Agreement" ("Rider") that provided that by entering into the Extension Agreement none of ECI's creditors gave up any of their "claims, rights or remedies that ... [they] may have now or hereafter have against [Zinn]." The Rider also provided that Zinn did not waive any defense he may have against any creditor.

In 1983, ECI failed to perform under the Extension Agreement and filed for bankruptcy. Panasonic made demand on Zinn, who refused to pay. Panasonic then brought this action against Zinn to recover under the written guaranty. Panasonic moved for summary judgment, claiming that Zinn was liable by the terms of the guaranty. Zinn filed a cross-motion for summary judgment, relying on four affirmative defenses: (1) illegality, (2) repudiation, (3) waiver, and (4) statute of limitations. The trial court granted Zinn's cross-motion and denied Panasonic's motion, holding that the guaranty was illegal and that Panasonic had repudiated the guaranty. Panasonic appeals. We reverse and render as to liability.

Zinn contends that he has raised a fact issue as to the amount of damages. Panasonic concedes that on this record Zinn has raised a fact issue as to damages." For convenience, in this opinion we will refer to the debt as being owed to Panasonic. The amount due is a matter for the trial court to determine.

## II.

### Illegality

The guaranty provided that "[t]he guarantor hereby waives the benefit of all Homestead Exemption laws." Because Texas courts will not enforce an illegal contract, *see Rogers v. Wolfson,* 763 S.W.2d 922, 924 (Tex.App.—Dallas 1989, writ denied), and because in Texas a homestead "may not be encumbered by liens or mortgages other than for purchase money, property tax and materialmen's liens," *Commonwealth Nat'l Bank v. United States,* 573 F.Supp. 881, 883 (N.D.Tex.1983) (citing Tex. Const. art. 16, § 50), Zinn contends that the district court correctly declared the guaranty void as a violation of the Texas Constitution. We disagree.

Texas courts distinguish between contracts that have an illegal subject matter and contracts that have a legal subject matter but contain "certain ancillary provisions" that are illegal. *See Rogers,* 763 S.W.2d at 924. Certainly, the subject matter of the contract—securing credit with a personal guaranty—is legal. Where the subject matter of the contract is legal, but the contract contains an illegal provision that is not an essential feature of the agreement, the illegal provision may be severed and the valid portion of the contract enforced. *Id.* at 925; *see Williams v. Williams,* 569 S.W.2d 867, 871 (Tex.1978). In determining whether a particular provision is severable, "the issue is whether [the parties] would have entered into the agreement absent the illegal parts." *Rogers,* 763 S.W.2d at 925.

Zinn has presented no evidence that the homestead waiver was an essential element of the guaranty or that the parties would not have entered into the agreement absent that provision. The homestead waiver provision clearly is not an essential feature of the guaranty. The essential purpose of the guaranty was for Panasonic to extend ECI an open account credit line

on Zinn's promise to repay the debt. The homestead waiver provision is ancillary and merely provides additional security for Zinn's obligation. An otherwise lawful promissory note is not rendered unenforceable simply because the security given on the note is unenforceable. *See Commonwealth Nat'l Bank*, 573 F.Supp. at 884 n. 6 (although deed of trust on homestead given to secure promissory note resulted in illegal lien, lender could nevertheless seek judgment against debtor on note); *Pappas v. Gounaris*, 158 Tex. 355, 311 S.W.2d 644, 647–48 (1958) (same). Because the subject matter of the contract is legal and the homestead waiver provision is severable, the trial court erred in holding the guaranty void.

### Repudiation

The guaranty provides that it
shall remain in full force and effect until [Zinn] ... shall have given notice in writing to make no further advances on the security of this guaranty....

Zinn does not allege that he ever provided written notice to Panasonic terminating the guaranty. Rather, Zinn argues, and the trial court held, that Panasonic repudiated the contract in 1973 when Panasonic stopped selling products to ECI. We disagree.

■ A contract may be repudiated by words or conduct that show "a fixed intention to abandon, renounce and refuse to perform the contract." *Hauglum v. Durst*, 769 S.W.2d 646, 651 (Tex.App.—Corpus Christi 1989, no writ); *Group Life & Health Ins. Co. v. Turner*, 620 S.W.2d 670, 673 (Tex.Civ.App.—Dallas 1981, no writ). Once a party repudiates a contract, the other party is discharged from their duties under the contract. *Glass v. Anderson*, 596 S.W.2d 507, 511 (Tex.1980).

■ As support for his position that Panasonic repudiated the guaranty, Zinn relies on *Knight v. Wirotzious*, 495 F.2d 543 (5th Cir.1974) (applying Alabama law) and *Burt v. Community Nat'l Bank*, 142 So.2d 118 (Fla.Dist.Ct.App.1962). In those cases guarantors were released from their liabilities under guaranties by the actions of their creditors. Those cases are distinguishable, however, because in both *Knight* and *Burt*, the guarantors were released from the guarantees as a result of direct statements made by the creditors to the guarantors.[3] In the instant case, Panasonic did not inform or give any indication to Zinn that his guaranty would no longer be sufficient security for future loans or that his guaranty would be cancelled once the outstanding debt was retired. Panasonic's refusal to sell ECI products for approximately four years does not constitute a repudiation of Zinn's personal guaranty. *See Brann v. Flagship Bank*, 450 So.2d 237, 238–39 (Fla.Dist.Ct.App.1984) (guaranty that was "absolute, continuing, and revocable only by notice in writing," was enforceable despite fact that note was not made until two and one-half years after guaranty was executed). Panasonic's refusal to sell to ECI in 1973 and the subsequent four-year period of inactivity does not demonstrate a "fixed intention to abandon" the guaranty. *See Hauglum*, 769 S.W.2d at 651.

Zinn also argues that Panasonic's conduct in 1977, when it resumed selling to ECI, establishes that the guaranty was repudiated in 1973. Before resuming sales to ECI, Panasonic conducted credit checks on ECI, required ECI to furnish its tax identi-

**3.** In *Knight*, the guarantors were released from their liabilities under a guaranty (which provided that the guaranty could be terminated only upon written notice by the guarantors) when the creditor sent a letter to the guarantors stating that once the outstanding debt was paid-off, the guaranty would be cancelled. 495 F.2d at 544–45 & 545 n. 5.

In *Burt*, the guarantor was released from his liability under a continuing guaranty when the creditor sent a letter to the guarantor informing him that once the outstanding debt was paid, no further credit would be extended "unless the guaranty was strengthened" in a manner specified by the creditor. 142 So.2d at 119–20 & 119 nn. 2–3. Because Burt did not "strengthen" his guaranty as specified by the lender, he was not liable for subsequent loans that were made without his knowledge or consent. An additional fact distinguishing *Burt* from the instant dispute is that unlike Zinn's guaranty, the guaranty in *Burt* did not specify the manner in which the guaranty was to be revoked.

fication number, and treated ECI as a new customer. Zinn contends that Panasonic was not relying on Zinn's guaranty in extending credit. According to Zinn, this conduct establishes that Panasonic repudiated the guaranty in 1973.

■ Running a credit check on ECI, establishing a new account, and otherwise verifying ECI's ability to pay its bills does not establish a repudiation of Zinn's guaranty. These actions alone, or considered in conjunction with the four-year period of inactivity, do not prove a "fixed intention to abandon" the guaranty.

■ Zinn's guaranty expressly provided that the "guaranty shall not be abrogated or affected in any manner by any ... change from any cause whatsoever" and that Zinn's liability was to continue until he gives written notice to Panasonic. Where the express terms of guaranty so provide, a guarantor's obligation continues until revoked in writing. *See Federal Deposit Ins. Corp. v. Cardinal Oil Well Servicing Co.*, 837 F.2d 1369, 1371 (5th Cir.1988); *Warner v. First Nat'l Bank*, 369 S.W.2d 651, 652-53 (Tex.Civ.App.—San Antonio 1963, no writ). Zinn's "continuing guaranty" was not revoked in writing as specified in the guaranty; it, therefore, remained in effect according to its terms. *See Hercules Exploration, Inc. v. Halliburton Co.*, 658 S.W.2d 716, 724 (Tex.App.—Corpus Christi 1983, writ ref'd n.r.e.).

*Waiver*

■ The same answer must be given to Zinn's contention that Panasonic waived its rights under the guaranty as we gave to the argument that Panasonic repudiated the guaranty. When Panasonic stopped sales to ECI in 1973, there was no outstanding balance for Panasonic to pursue against Zinn under the guaranty. The termination of sales to ECI in 1973, the ensuing four-year period of inactivity, and the renewed relationship in 1977 cannot be said to be an "intentional relinquishment of a known right" against Zinn or "intentional conduct inconsistent with claiming it." *United States Fidelity & Guaranty Co. v. Bimco Iron & Metal Corp.*, 464 S.W.2d 353, 357 (Tex.1971).

*Statute of Limitations*

■ Panasonic's contract claim against Zinn is governed by the four-year statute of limitations. Tex.Civ.Prac. & Rem.Code Ann. § 16.004 (Vernon 1986). Zinn contends that the limitations period began running in 1973 or 1977 when Panasonic repudiated or waived the continuing guaranty. *See Intermedics, Inc. v. Grady*, 683 S.W.2d 842, 845 (Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.) (limitations period begins running on continuing contracts when one party refuses to fulfill contract or prevents other party from performing).

However, the guaranty was neither repudiated nor waived by Panasonic; it was in effect at the time the Extension Agreement and the Rider were executed. Those documents preserved the position of the parties as of the date of their execution. The Extension Agreement restructured ECI's debt, including that owed to Panasonic. ECI defaulted under the Extension Agreement in 1983. Subsequently, Zinn refused to pay under the guaranty. Panasonic's claim, filed in August of 1986, is within the four-year limitations period.

There being no genuine issue of material fact and Panasonic being entitled to judgment as a matter of law, we REVERSE and RENDER as to liability. The case is REMANDED for a determination of damages.