Bill FOWLER, Appellant,

v.

RESOLUTION TRUST CORPORATION, as Receiver for City Savings, F.S.B., Appellee.

No. 08–92–00192–CV.

Court of Appeals of Texas, El Paso.

April 7, 1993.

D. Woodard Glenn, Quast & Glenn, Dallas, for appellant.

Robert A. Axelrad, Webb, Zimmerman, Beck, Flaum & Axelrad, P.C., Houston, for appellee.

Before OSBORN, C.J., and KOEHLER and BARAJAS, JJ.

## OPINION

BARAJAS, Justice.

This is an appeal from a forcible entry and detainer action brought by the Resolution Trust Corporation, Appellee, attempting to evict Bill Fowler, Appellant, from a leasehold premises. The trial court ruled in favor of Appellant finding the lease to have been partially ratified by the Resolution Trust after it had taken over the lease subsequent to a foreclosure sale. In four points, Appellant asserts the trial court erred in finding only partial, not full, ratification and, further, in denying him attorney's fees. We reverse and render in part and affirm in part.

## I. SUMMARY OF THE EVIDENCE

On September 2, 1983, Keith and Dana Rusk executed a Deed of Trust to secure the payment of a note made payable to City Federal Savings and Loan Association. The residence subject to the Deed of Trust is located at 2206 Forest Creek, McKinney, Collin County, Texas and is the subject of this appeal.

On December 15, 1990, Bill Fowler, Appellant, executed a written agreement with Keith Rusk to lease a residence located in McKinney, Texas. The lease agreement called for monthly rental payments of $1,000 for a term as follows:

3. *TERM*: The initial term of this lease is for a period of 24½ months, commencing on the 15th day of December, 1990, and expiring on the 31st day of December 1992, unless sooner terminated according to the provisions hereof. *This lease will be automatically renewed on a month to month basis unless written notice of termination is given by either party at least thirty (30) days prior to the expiration of the initial term hereof or prior to the expiration of any renewal term hereof, if applicable.* If the initial term hereof commences on a date other than the first day of a calendar month, rental for the first and last months shall be pro-rated.[1]

The Rusks defaulted on their obligations under the note to City Federal. On January 1, 1991, fifteen days after Appellant and Rusk entered into the lease, City Federal foreclosed on the above property and purchased the property at a public sale. Soon thereafter, City Federal was declared insolvent and the Resolution Trust Corporation was appointed its receiver.

Subsequent to the foreclosure, Appellant contacted City Federal in order to determine where to forward his monthly rental payments. Appellant was referred by a clerical employee to an individual named Don Phost. Phost represented himself to be an employee of the Resolution Trust and

---

1. In addition to the language pertaining to the term of the lease agreement, the lease provided in relevant part as follows:

22. *HOLDOVER:* If TENANT fails to surrender possession to the PREMISES on or before the expiration of the term hereof and LANDLORD has given written notice of termination to TENANT pursuant to Paragraph 3 above, then in such event, at LANDLORD'S option, such holding over shall either (a) constitute a tenancy-at-will at a daily rental equal to $33, payable upon demand, or (b) constitute a tenancy from month to month at a monthly rental equal to $1,000, payable monthly in advance.

. . . . .

29. *SPECIAL CONDITIONS:* Landlord hereby gives Tenant right to purchase the property for the amount of $259,000 at Tenant's option

and also gives Tenant right of first refusal on any offer received by a third party.

30. *RENEWAL OPTION:* Provided that at the end of the initial term of this lease TENANT is not in default of any term, condition, or covenant contained herein, TENANT, but no assignee or subtenant, shall have the right and option to renew this lease, by written notice delivered to LANDLORD at least 20 days prior to the expiration of the initial term hereof with a copy to BROKER, for an additional term of 24 months, upon the same terms, conditions, and covenants contained herein, except that the rental for the renewal term shall be $1,200 per month; and TENANT shall have no further renewal options thereafter unless expressly granted by LANDLORD in writing.

said he was the person responsible for the file concerning the residence. Phost gave Appellant the requested forwarding address. The record shows that although Phost did identify himself to Appellant as the Resolution Trust officer responsible for the file on the residence, he did not state his title or his duties in regard to the residence. The record further shows that at no time did Phost state that he had any authority to commit the Resolution Trust to the terms of the lease, nor was there ever any express discussion concerning the validity of the lease, other than where Appellant should forward his monthly rental payment. Appellant's only discussion about his future possession of the residence was Phost's inquiry as to whether Appellant wished to purchase the residence. Appellant replied that he did not, but that he might in the future.

Over the next four months, Appellant forwarded his monthly rental payments to the Resolution Trust, who in turn accepted and cashed the checks. In late April or early June of 1991, Phost notified Appellant, by telephone, of the Resolution Trust's decision to repudiate the residential lease agreement. On June 10, 1991, Appellant was requested in writing to vacate the residence.

In spite of the written notice to vacate, Appellant continued to occupy the residence and continued to forward his monthly rental payments to the Resolution Trust. The Resolution Trust returned the rental payments for the months of May, June, July and August 1991. In particular, the August check was returned to Appellant along with a cover letter notifying him that he was in "wrongful possession of the residence." Appellant nonetheless continued occupying the residence, and forwarded two additional rental payments in September and October of 1991. The monthly rental payments for September and October

ber of 1991 were accepted by the Resolution Trust. On August 27, 1991, the Resolution Trust brought a forcible entry and detainer action in the Justice of the Peace Court, Precinct 1, Collin County, Texas. Appellant filed a counterclaim and declaratory judgment alleging the Resolution Trust breached the lease agreement, that he was damaged thereby and that he should receive attorney's fees. The Justice of the Peace found in favor of Appellant, and the Resolution Trust appealed to the County Court at Law, Collin County, Texas. After a trial *de novo*, the trial judge found that the actions of the Resolution Trust after the foreclosure sale amounted to a "partial" ratification of the lease agreement. Appellant was permitted to remain in the residence until July 15, 1992.

## II. DISCUSSION

### A. Factual sufficiency of the evidence to support ratification

■ In his first point of error, Appellant contends the trial court erred in finding that the lease agreement had been "partially" ratified because the evidence established that it had been "fully" ratified as a matter of law. Alternatively, Appellant argues the trial court's finding is against the great weight and preponderance of the evidence. In addition, in its first cross-point, the Resolution Trust likewise asserts the trial court erred in finding "partial" ratification because the Resolution Trust's right to immediate possession was established as a matter of law; or the finding was against the great weight and preponderance of the evidence.[2] Insofar as both parties' points attack the trial court's finding of ratification, partial or otherwise, on the basis of factual insufficiency, we address and dispose of both parties' initial points simultaneously.

2. Both Appellant's Points of Error Nos. One and Two, as well as Appellee's Cross–Points Nos. One and Two, are multifarious in nature insofar as each point and cross-point embraces more than one specific ground of error. *Pooser v. Lovett Square Townhomes Owners' Association,* 702 S.W.2d 226, 228 (Tex.App.—Houston [1st

Dist.] 1985, writ ref'd n.r.e.). While this Court is not required to consider multifarious points of error, it will do so in the interest of justice. *Wheat v. Delcourt,* 708 S.W.2d 897, 901 (Tex. App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.).

Where, as in the instant case, there is a statement of facts, the trial judge's findings of fact are not conclusive.[3] *Middleton v. Kawasaki Steel Corporation,* 687 S.W.2d 42, 44 (Tex.App.—Houston [14th Dist.] 1985), *writ ref'd n.r.e. per curiam,* 699 S.W.2d 199 (Tex.1985). Therefore, the judge's findings of fact are reviewable for legal and factual sufficiency of the evidence to support them, by the same standards which are applied in reviewing the legal and factual sufficiency of the evidence which support jury findings. *See Valencia v. Garza,* 765 S.W.2d 893, 896 (Tex.App.—San Antonio 1989, no writ); *First National Bank v. Kinabrew,* 589 S.W.2d 137, 146 (Tex.Civ.App.—Tyler 1979, writ ref'd n.r.e.).

A factual insufficiency point requires us to examine all of the evidence in determining whether the finding in question is so against the great weight and preponderance of the evidence as to be manifestly unjust. *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660 (1951); *Worsham Steel Company v. Arias,* 831 S.W.2d 81 (Tex.App.—El Paso 1992, no writ); *Fuentes v. McFadden,* 825 S.W.2d 772 (Tex.App.—El Paso 1992, no writ). The reviewing court cannot substitute its conclusions for those of the fact finder. If there is sufficient competent evidence of probative force to support the finding, it must be sustained. *Carrasco v. Goatcher,* 623 S.W.2d 769 (Tex.App.—El Paso 1981, no writ). It is not within the province of an appellate court to interfere with the fact finder's resolution of conflicts in the evidence or to pass on the weight or credibility of the witness's testimony. *Benoit v. Wilson,* 150 Tex. 273, 239 S.W.2d 792 (1951).

Appellant bases his assertion that the Resolution Trust ratified the lease agreement entered into between himself and Rusk, and is therefore estopped from repudiating the lease, on the theory that the Resolution Trust conducted itself as if the lease agreement was in full force and effect. We disagree.

Appellant correctly relies on *Zieben v. Platt,* 786 S.W.2d 797, 802 (Tex.App.—Houston [14th Dist.] 1990, no writ) in stating the general rule regarding ratification of contracts. Ratification occurs when a party to a contract recognizes the validity of that contract by acting and/or performing under it or otherwise affirmatively acknowledging it. *Id.,* at 802; *Wetzel v. Sullivan, King & Sabom, P.C.,* 745 S.W.2d 78, 81 (Tex.App.—Houston [1st Dist.] 1988, no writ). Ratification may be expressed or implied from a course of conduct. *Zieben,* 786 S.W.2d at 802; *Diamond Paint Company of Houston v. Embry,* 525 S.W.2d 529, 535 (Tex.Civ.App.—Houston [14th Dist.] 1975, writ ref'd n.r.e.).

The facts contained in the record reveal that there is no evidence that the parties ever discussed honoring the lease agreement, nor is there any evidence that the Resolution Trust ever expressly promised or otherwise committed itself to the terms of the lease agreement. Appellant maintains that the acceptance of his monthly rental payment by the Resolution Trust, and the cashing of those checks, estops the Resolution Trust from honoring the lease agreement. However, the mere acceptance of rent payments does not estop the Resolution Trust, a governmental agency, from rejecting the lease agreement. *Capitol Rod & Gun Club v. Lower Colorado River Authority,* 622 S.W.2d 887, 895–96 (Tex.App.—Austin 1981, ref'd n.r.e.); see also *Ontiveros v. MBank Houston, N.A.,* 751 F.Supp. 128 (S.D.Tex.1990). Additionally, while Appellant maintains that the Resolution Trust ratified the lease agreement due to the purported representations of Don

---

**3.** Conclusions of law are always reviewable, *Middleton v. Kawasaki,* 687 S.W.2d 42, 44 (Tex.App.—Houston [14th Dist.] 1985), *writ ref'd n.r.e. per curiam,* 699 S.W.2d 199 (Tex.1985), and will be upheld on appeal if the judgment can be sustained on any legal theory supported by the evidence. *Simpson v. Simpson,* 727 S.W.2d 662, 664 (Tex.App.—Dallas 1987, no writ). Conclusions of law must be attacked as a matter of law. *Mercer v. Bludworth,* 715 S.W.2d 693, 697 (Tex.App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.). Incorrect conclusions of law will not require reversal, however, if the controlling findings of fact will support a correct legal theory. *Valencia v. Garza,* 765 S.W.2d 893, 898 (Tex.App.—San Antonio 1989, no writ).

Phost, there is no evidence in the record that Phost had any authority to enter a lease agreement on behalf of his employer, the Resolution Trust. The trial court correctly concluded that the burden of proof as to Phost's authority rested on Appellant and that Appellant failed to satisfy that burden.

■ Additionally, it is clear that the rights and powers of both parties are delineated in, and are to be governed by, federal statute. *See generally*, 12 U.S.C. § 1811 et seq. This statute provides, as both sides agree, that the Resolution Trust as receiver has the power to repudiate the lease. Specifically, § 1821(e), provides:

(1) Authority to repudiate contracts

In addition to any other rights a conservator or receiver may have, the conservator or receiver for any insured depository institution may disaffirm or repudiate any contract or lease—

(A) to which such institution is a party;

(B) the performance of which the conservator or receiver, in the conservator's or receiver's discretion, determines to be burdensome; and

(C) the disaffirmance or repudiation of which the conservator or receiver determines, in the conservator's or receiver's discretion, will promote the orderly administration of the institution's affairs.

(2) Timing of repudiation

The conservator or receiver appointed for any insured depository institution in accordance with subsection (c) of this section shall determine whether or not to exercise the rights of repudiation under this subsection within a **reasonable period** following such appointment. (Emphasis added).

12 U.S.C. § 1821(e)(1) (1989). Pursuant to the above statute, in order for the Resolution Trust to properly repudiate the lease agreement, it must establish that City Federal was a party to the lease agreement, that the performance of the lease was burdensome, that the repudiation will promote the orderly administration of the institution's affairs, and that it repudiated the lease agreement within a reasonable period of time. Thus, the question becomes not whether the Resolution Trust had the power to repudiate, or whether they did so within a reasonable time, but, rather, whether they properly complied with the statute to effect a proper repudiation.

■ "Repudiation" consists in such words or actions by a contracting party as indicating that he is not going to perform his contract in the future. *Group Life and Health Insurance Company v. Turner*, 620 S.W.2d 670, 673 (Tex.Civ.App.—Dallas 1981, no writ); *Baytown State Bank v. Don McMillian Leasing Company*, 551 S.W.2d 771 (Tex.Civ.App.—Houston [14th Dist.] 1977, writ ref'd); *Continental Casualty Company v. Boerger*, 389 S.W.2d 566, 568 (Tex.Civ.App.—Waco 1965, writ dism'd). It is conduct which shows a fixed intention to abandon, renounce and refuse to perform the contract. *Id.*, at 568; *Panasonic Company Division of Matsushita Electric Corp. of America v. Zinn*, 903 F.2d 1039 (5th Cir.1990).

As noted above, the record demonstrates that in late April or early June of 1991, Phost notified Appellant, by telephone, of the Resolution Trust's decision to repudiate the residential lease agreement. Appellant was requested, in writing, to vacate the residence. Additionally, Appellant's monthly rental payments for the months of May, June, July and August 1991 were returned. The August check was returned with correspondence notifying Appellant that he was in "wrongful possession of the residence."

We have carefully examined the entire record and find that it more than adequately demonstrates conduct on the part of the Resolution Trust to abandon, renounce and refuse to perform according to the terms of the lease agreement, and further, that the evidence is sufficient to show that the repudiation occurred within a reasonable period of time.[4] The same record however, is

---

4. Although it took the Resolution Trust in the instant case approximately four months to repudiate the lease, courts have found longer periods to be reasonable. *Federal Deposit Insurance*

wholly devoid of any evidence that the continued performance under the terms of the lease agreement would prove burdensome to the Resolution Trust or that such repudiation would promote the orderly administration of the affairs of City Federal, the financial institution over which the Resolution Trust was appointed receiver. Consequently, while the repudiation of the lease agreement by the Resolution Trust may have been timely, it has failed to establish its statutory right to such repudiation.

We find that the trial court's finding that the Resolution Trust ratified the lease agreement, while not germane to the ultimate disposition of the above points and cross-points, is indeed against the great weight and preponderance of the evidence. Furthermore, we find that the Resolution Trust's contention that they had the immediate right to possession and their requests that Appellant vacate the residence because he was in "wrongful possession" were unfounded, premature and contrary to statute. The question of whether a partial or complete ratification occurred is therefore irrelevant, and the trial court's finding of such partial ratification was error as a matter of law. Accordingly Appellant's Points of Error Nos. One and Two are sustained, and Appellee's Cross–Points Nos. One and Two are overruled.

## B. Entitled to attorney's fees based on a counterclaim brought pursuant to Declaratory Judgments Act

■ In his third and fourth points of error, Appellant asserts the trial court erred or, alternatively, abused its discretion in denying his request for attorney's fees. Appellant sought at trial and contends on appeal that he is due attorney's fees based

on the Uniform Declaratory Judgments Act, Section 37.009. TEX.CIV.PRAC. & REM. CODE ANN. § 37.009 (Vernon 1986).

■ While attorney's fees are normally recoverable under the Declaratory Judgments Act, when one seeks such a judgment by counterclaim they must also show that the counterclaim is not seeking resolution of disputes already pending before the court. *John Chezik Buick Company v. Friendly Chevrolet Company*, 749 S.W.2d 591, 594–95 (Tex.App.—Corpus Christi 1988, writ denied). Otherwise, a counterclaim presenting no new controversies provides a means to bring a suit "solely to pave an avenue to attorney's fees" and is improper. *Narisi v. Legend Diversified Investments*, 715 S.W.2d 49, 51–52 (Tex. App.—Dallas 1986, writ ref'd n.r.e.); *John Chezik Buick Company*, 749 S.W.2d at 595.

In the instant case, the Resolution Trust brought the forcible entry and detainer action to determine the issue of possession of the residence, and to thereby also decide the rights, if any, of the parties under the lease. Once possession is decided, by implication, the rights of the parties under that lease are also disposed of. When the court found that Appellant could remain in the residence until July 15, 1992, after which time the Resolution Trust was to obtain possession, this finding, although erroneous, determined possession and found the lease, and its terms, to become inoperative after that date. Appellant cannot now contend that the trial court could decide possession without also deciding the rights dependent upon that possession.[5] Thus, Fowler has failed to establish his right to attorney's fees.[6] Accordingly, Appellant's

---

*Corporation v. Texarkana National Bank*, 874 F.2d 264, 268 (5th Cir.1989), cert. denied, 493 U.S. 1043, 110 S.Ct. 837, 107 L.Ed.2d 833 (1990).

**5.** In fact, the trial court found that "both counterclaims are mirror images of the issues in the RTC's claim, and that the counterclaims raise nothing other than the issues raised in Fowler's affirmative defenses to the RTC's claim."

**6.** On appeal, Resolution Trust argues that when an action is brought by or against the United States, the Equal Access to Justice Act ("EAJA")

is the applicable statute upon which one may request attorney's fees, 28 U.S.C. § 2412; *United States v. Eighty–Eight (88) Designated Accounts Containing Monies Traceable to Exchanges For Controlled Substances*, 786 F.Supp. 1578, 1579 (S.D.Fla.1992), and the EAJA acts to the exclusion of otherwise operative state statutes. See *Federal Deposit Insurance Corporation v. Addison Airport of Texas, Inc.*, 733 F.Supp. 1121, 1124 (N.D.Tex.1990) (defendant in action by FDIC not permitted to recover attorney's fees based on Texas Civil Practice and Remedies Code § 38.001(8); the applicability of fees pur-

Points of Error Nos. Three and Four are overruled.

Having sustained Appellant's Points of Error Nos. One and Two, overruled Appellee's Cross–Points One and Two, and having overruled Appellant's Points of Error Nos. Three and Four, we reverse and render in part and affirm in part the judgment of the trial court.

suant to state law held to be irrelevant); *Irving Independent School District v. Packard Properties, Ltd.*, 762 F.Supp. 699, 704 (N.D.Tex.1991) (attorney's fees not available against FDIC based on Texas Tax Code). Thus the Resolution Trust argues that since the EAJA provided the only basis upon which Appellant could seek attorney's fees, and because he failed to meet the statutory requirements for recovery of such fees, Appellant is not entitled to any attorney's fees. 28 U.S.C. § 2412(b); *Eighty-Eight (88) Designated Accounts*, 786 F.Supp. at 1579. We need not reach this issue, and any questions incident thereto insofar as Appellant never sought fees based on federal law.