In re **AMERICAN GENERAL AIRCRAFT CORPORATION.**

**AMERICAN GENERAL AIRCRAFT CORPORATION, Plaintiff,**

v.

**WASHINGTON COUNTY ECONOMIC DEVELOPMENT DISTRICT, Defendant.**

**Bankruptcy No. 94–20443.
Adv. No. 94–2095.**

United States Bankruptcy Court,
N.D. Mississippi.

June 21, 1995.

Barney E. Eaton, III and Eileen Shaffer Bailey, Jackson, MS, for American General Aircraft Corporation.

David R. Hunt and Patricia W. Burchell, Hunt and Ross, Clarksdale, MS, for Washington County Economic Development District.

David J. Cocke, The Bogatin Law Firm, Memphis, TN, for Trustee Alex Gates.

## OPINION

DAVID W. HOUSTON, III, Bankruptcy Judge.

On consideration before the court is a motion for summary judgment filed by the defendant, Washington County Economic Development District; response to said motion having been filed by the Chapter 7 trustee, Alex Gates; and the court having considered the motion, response, and memorandum briefs, hereby finds as follows, to-wit:

### I.

The court has jurisdiction of the subject matter of and the parties to this adversary proceeding pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157. This is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(A), (B), (K), and (O).

### II.

Summary judgment should only be granted when there are no genuine issues of material fact and one party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The moving party must present its basis for the motion; the non-moving party then 56(c). The moving party must present its basis for the motion; the non-moving party then has a duty to present enough evidence to indicate the existence of a factual dispute. *Celotex v. Catrett Corp.*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

It is not the function of the court to weigh the evidence and determine its credibility, but to decide whether there is a genuine issue for trial.

The court must, however, determine if the factual issues are material. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 211 (1986).

As to the issue before the court, there are no material factual issues in dispute. Therefore, summary judgment is appropriate.

## III.

## INTRODUCTION

The debtor, American General Aircraft Corporation (AGAC), filed this adversary proceeding requesting the court to determine the extent and validity of an alleged lien existing in favor of the Washington County Economic Development District (Development District) upon certain machinery, equipment, and tooling which the Development District leased to AGAC pursuant to an Industrial Enterprise Lease Agreement. The single issue now before the court is whether the transaction between the Development District and AGAC is a "true lease" or a "lease intended for security."

## IV.

## FACTUAL BACKGROUND

The Development District is a public agency established by the Washington County Board of Supervisors pursuant to § 19–5–99, Miss.Code Ann., (1972), for the purpose of securing and furthering industrial development in Washington County, Mississippi. On November 4, 1991, at the request of the Development District, the Board of Supervisors adopted a resolution authorizing the issuance of general obligation industrial development bonds in the principal amount of $2,000,000.00. The purpose was to raise money to equip four industrial buildings, located in the Greenville Airport Industrial Park, with equipment, machinery, and tooling, for leasing to AGAC.

On January 13, 1992, L. Carl Hagwood, the State's Bond Attorney, issued his opinion certifying that all of the acts relative to the issuance of the aforementioned bonds were in strict compliance with the Constitution and laws of the State of Mississippi. On January 27, 1992, the bond issue was validated pursuant to a decree of the Chancery Court of Washington County, Mississippi.

As a part of the bond issue process, AGAC conveyed the equipment, machinery, and tooling to the Development District pursuant to a bill of sale dated February 18, 1992. Thereafter, these items were leased by the Development District to AGAC pursuant to the Industrial Enterprise Lease Agreement. It was dated February 1, 1992, but executed on February 19, 1992. Certain provisions of the agreement are set forth as follows:

1. The payments under the lease were to be utilized to repay the $2,000,000.00 bond issue over a period of fifteen years. The principal, interest, and bond premium were amortized over 180 monthly payments beginning on February 15, 1992. (§ 5.03A.)

2. AGAC was to pay all taxes and government charges, including the payment of fees to the Bond Paying Agent. (§ 5.03B.)

3. AGAC was to prosecute or defend any actions or proceedings which it deemed reasonably necessary to secure or protect its rights of use and possession of the leased property. (§ 5.04)

4. AGAC was to repair, maintain, and replace the leased property, as well as, acquire substitute equipment, etc., should same become obsolete or nonuseful in the operation of AGAC's business. (§ 5.05)

5. AGAC was to maintain and pay for property damage and casualty insurance applicable to the "Project," defined in the agreement as the equipment, machinery, and costs related to the issuance of the bonds. (§ 5.06)

6. AGAC had the option to redeem or prepay the bond issue. (§ 5.14)

7. At the termination of the lease, AGAC had the option to purchase the "Project" for the purchase price of $100.00. (§ 5.16)

8. The agreement was a "net lease" to the Development District, free from all costs, expenses, and obligations including taxes, assessments, and utility charges. (§ 7.03)

In connection with the transaction, a guaranty agreement, dated February 1, 1992, was executed by AGAC in favor of the Development District, as well as, Washington County, Mississippi, the bond issuor. This agreement was also executed by approximately thirty-five individual and corporate guaran-

tors. Its purpose was to further insure the repayment of the bond indebtedness.

AGAC paid the lease as agreed for approximately eighteen months and then defaulted. On February 25, 1994, AGAC filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. The case was converted to Chapter 7 on November 15, 1994. This adversary proceeding was initially commenced by AGAC as the Chapter 11 debtor-in-possession. However, since conversion, it has been assumed by the Chapter 7 trustee, Alex Gates.

## V.

■ As noted earlier, the only issue presently before the court is whether the Industrial Enterprise Lease Agreement is a "true lease" or a "lease intended for security." Since the agreement provides that AGAC has the option of becoming the owner of the "Project" for $100.00 at the end of the lease, the court first looks to § 75–1–201(37), Miss. Code Ann., which provided, *effective the date of the subject transaction*, as follows:

(37) "Security interest" means an interest in personal property or fixtures which secures payment or performance of an obligation. The retention or reservation of title by a seller of goods notwithstanding shipment or delivery to the buyer (section 75–2–401) is limited in effect to a reservation of a "security interest." The term also includes any interest of a buyer of accounts or chattel paper which is subject to Chapter 9. The special property interest of a buyer of goods on identification of such goods to a contract for sale under section 75–2–401 is not a "security interest," but a buyer may also acquire "security interest," by complying with Chapter 9. Unless a lease or consignment is intended as security, reservation of title thereunder is not a "security interest" but a consignment is in any event subject to the provisions on consignment sales (section 75–2–326.) Whether a lease is intended as security is to be determined by the facts of each case; however, (a) the inclusion of an option to purchase does not of itself make the lease one intended for security, and (b) an agreement that upon compliance with

the terms of the lease the lessee shall become or has the option to become the owner of the property for no additional consideration or for a nominal consideration does make the lease one intended for security.

Miss.Code Ann. § 75–1–201(37) (1972).

The court is of the opinion that the aforementioned section is dispositive of the motion for summary judgment. A lease agreement which affords the lessee, upon compliance with the terms of the lease, an option to purchase the leased property for a nominal consideration is a "lease intended for security." In this case, the purchase price of $100.00 is obviously nominal, considering the $2,000,000.00 leasehold obligation. *See, James Talcott, Inc. v. Franklin National Bank,* 292 Minn. 277, 194 N.W.2d 775, 780 (1972); *Stanley v. Fabricators, Inc.,* 459 P.2d 467, 470 (Alaska 1969); *Whitworth v. Krueger,* 98 Idaho 65, 558 P.2d 1026, 1029 (1976); *Peco, Inc. v. Hartbauer Tool and Die Co.,* 262 Or. 573, 500 P.2d 708, 710 (1972); *Kupka v. Morey,* 541 P.2d 740, 746 (Alaska 1975); and *Title Insurance Co. of Minnesota v. Construction Escrow Service, Inc.,* 675 S.W.2d 881, 888 (Mo.App.1984). *See also,* Annotation, *Equipment Leases as Security Interest within UCCs § 1–201(37),* 76 A.L.R.3d 11 (1977).

Under similar circumstances, this court has reached the same conclusion. *See, In re 20th Century Enterprises, Inc.,* 152 B.R. 119 (Bankr.N.D.Miss.1992). In addition to the nominal option purchase price, there were several provisions in the 20th Century Enterprises agreement, practically identical to those extracted above from the AGAC agreement, that supported the conclusion that the transaction was a "lease intended for security." One factor even more glaring in this proceeding is the provision requiring AGAC to acquire replacement equipment upon the condition of obsolescence or nonusefulness of the original equipment.

## VI.

■ The Development District argues that it has no authority to enter into this transaction other than as a "true lease." It relies on § 19–5–99, Miss.Code Ann., (1972), as well

as, Article 7, § 183 of the Mississippi Constitution of 1890 as support for this position. It states that to construe the Industrial Enterprise Lease Agreement as a "lease intended for security" renders it unconstitutional and unenforceable. The court is of the opinion that the reasoning of the Development District is misplaced.

Nowhere in § 19–5–99, Miss.Code Ann., (1972), is there a prohibition against the Development District entering into a "lease intended for security." To the contrary, subsection (5)(a) provides as follows:

(5) Economic development districts established under this section are authorized and empowered:

(a) To sell, lease, trade, exchange or otherwise dispose of industrial sites or rail lines situated within industrial parks to individuals, firms or corporations, public or private, for industrial and warehouse use upon such terms and conditions, and for such considerations, with such safeguards as will best promote and protect the public interest, convenience and necessity, and to execute deeds, leases, contracts, easements and other legal instruments necessary or convenient therefor. *Any industrial lease may be executed by the district upon such terms and conditions and for such monetary rental or other considerations as may be found to be in the best interest of the public, upon an order or resolution being spread upon the minutes of the district authorizing same.* (emphasis added)

Miss.Code Ann. § 19–5–99 (1972).

Article 7, § 183 of the Mississippi Constitution of 1890 provides in pertinent part as follows:

No county, city, town, or other municipal corporation shall hereafter become a subscriber to the capital stock of any railroad or other corporation or association, or make appropriation, or *loan its credit* in aid of such corporation or association. (emphasis added)

In support of its position, the Development District cites *Albritton v. City of Winona*, 181 Miss. 75, 178 So. 799 (1938), where the Mississippi Supreme Court was called upon to determine the constitutionality of the issuance of bonds by the City of Winona for the purpose of acquiring and leasing a municipal factory building to private entities. The question was whether the lease violated the Mississippi Constitution which prohibited the city from entering into a transaction that would be considered a "loan (of) its credit." The following quotes from the opinion are insightful:

"We must never forget that, in the words of John Marshall, a constitution is "intended to endure for ages to come, and, consequently, to be adapted to the various crises of human affairs. To have prescribed the means by which government should, in all future time, execute its powers, would have been to change, entirely, the character of the instrument, and give it the properties of a legal code. It would have been an unwise attempt to provide, by immutable rules, for exigencies which, if foreseen at all, must have been seen dimly, and which can be best provided for as they occur." M'Culloch v. Maryland, 4 Wheat. 316, 415, 4 L.Ed. 579...."

*Id.* at p. 806.

"Growth is the life of the law, and when it ceases to grow and to keep pace with social and economic needs it becomes a hindrance instead of an aid to the public welfare."

*Id.*

"The tax, of which complaint is here made, is to be levied, however, not for the acquisition and operation by a municipality of a manufacturing enterprise, but for the purchase of land and construction of a building thereon to be leased to individuals or private corporations. If the statute permits a lease of the property that would strip it of the purpose for which the statute permits its acquisition, as hereinbefore outlined, and permitted it to be devoted wholly to private purposes, the tax to be levied in order to pay the bonds, by the sale of which the money for purchasing the property is to be obtained, would then not be for a public purpose but in aid of private individuals, which under due process of law cannot be done. The statute does

not so permit, for in all its parts it contemplates that the proposed industry shall be operated for the accomplishment of the purposes outlined therein, either by the municipality itself or, if the municipal authorities and the Mississippi Industrial Commission deem best, by a lessee under a lease containing "such terms and conditions and with such safeguards as will best promote and protect the public interest." The lease, therefore, must be of such character as will insure the continued operation of the proposed industry with power in the municipality, under the supervision and control of the Mississippi Industrial Commission, to enforce the continued operation; in other words, the character of the lease is to be such as, in effect, to constitute the lessee the municipality's agent for operating the industry without liability on the municipality to others growing thereout. "If the end be public, it matters not that it is attained through a private channel." 1 Hares American Constitutional Law, p. 286.

*Id.* at p. 807.

In the opinion of this court, the *Albritton* decision was to the effect that the lease transaction was constitutional if it served the public purpose, not necessarily whether it was a "true lease" or a "lease intended for security."

In the instant proceeding, to the understanding of the court, there was no tax levied in connection with the AGAC bond issue. When the bonds were underwritten or sold, the monies were raised to acquire the equipment, machinery and tooling. The bond indebtedness was to be repaid through the lease amortization *and, if necessary,* through the enforcement of the guaranty agreement executed by AGAC and the thirty-five individual and corporate guarantors. Also, regardless of the form of the lease agreement, the repossession of the leased property would mitigate against the nonpayment of the lease obligations. This presumes, of course, that the parties complied with all of the procedural and technical requirements necessary to perfect their respective legal rights. *In a constitutional sense,* the court

cannot discern a dramatic difference in the two possible forms of the lease transaction.

Therefore, the court determines that the "lease intended for security" entered into between the Development District and AGAC does not violate the Mississippi Constitution. This conclusion appears also to be consistent with *Mayor and Board of Aldermen of the City of Natchez v. Engle,* 211 Miss. 380, 49 So.2d 808, 51 So.2d 564 (1951).

## VII.

### SEVERABILITY CLAUSE

In light of the conclusion reached in the paragraph immediately preceding, it is not necessary for the court to address the severability clause appearing in § 7.02 of the lease agreement. However, since the question was raised by the Development District, the court is of the opinion that a comment on the matter is appropriate. The severability clause is set forth as follows:

If any clause, provision or section of this Agreement is ruled invalid by any court of competent jurisdiction, the invalidity of such clause, provision or section shall not affect any of the remaining provisions hereof.

The Development District contends that if this court were to consider the lease agreement unconstitutional because it was a "lease intended for security" rather than a "true lease," then the court should impose the severability clause and invalidate the offending provision, i.e., the option to purchase at the conclusion of the lease for the nominal consideration of $100.00.

The court looks to the case of *Panasonic Co. v. Zinn,* 903 F.2d 1039 (5th Cir.1990), where the Fifth Circuit defined the test as to whether a particular provision in a contract is severable. *Zinn,* 903 F.2d at 1041. The Court stated that "where the subject matter of the contract is legal, but the contract contains an illegal provision *that is not an essential feature of the agreement,* the illegal provision may be severed and the valid portion of the contract enforced." *Id.* (emphasis added) (citation omitted). The option to purchase is clearly an essential feature of the AGAC lease and, therefore, is not severable.

## VIII.

### *ALTERNATIVE TO ENFORCEABILITY*

Indeed, if the lease runs afoul of Article 7, § 183 of the Mississippi Constitution, it could well be void. *See, Giles v. City of Biloxi,* 237 Miss. 65, 112 So.2d 815 (Miss. 1959). *See also, Wabol v. Villacrusis,* 898 F.2d 1381 (9th Cir.1990) (a lease in violation of the Constitution is void ab initio). "Where a contract is void at law for want of power to make it, a court of equity has no jurisdiction to enforce such contract, or in the absence of fraud, accident, or mistake to so modify it as to make it legal, and then enforce it." *Hedges v. Dixon County,* 150 U.S. 182, 191, 14 S.Ct. 71, 74, 37 L.Ed. 1044 (1893). "...[W]here the transaction or the contract is declared void because not in compliance with express statutory or constitutional provisions, a court of equity cannot interpose to give validity to such transaction or contract, or any part thereof." *Id.*

If the court found the lease agreement to be void, the Development District could loose its ability to assert a claim in this bankruptcy case. Voiding the lease would also require this court, as a court of equity, to unravel this transaction ab initio. This could affect the ownership of the machinery and equipment, as well as, potentially relieve the individual and corporate guarantors from their obligations under the guaranty agreement. The court cannot predict with any degree of certainty how disastrous the effects of this scenario might be. Fortunately, for the reasons set forth hereinabove, the court is not required to conclude this proceeding in this fashion.

The court would add, however, that unconstitutionality cannot magically transform what is statutorily a "lease intended for security" into a "true lease." If the agreement is unconstitutional, and the severability clause cannot salvage it, then it is void. This also speaks to the policy argument advanced by the Development District ... that if the court determines the AGAC lease to be a "lease intended for security," then thousands of like agreements in the State of Mississippi could be rendered invalid. Actually, the only choice before this court is whether the "lease intended for security" is valid because it serves the public purpose or whether it is void because of constitutional infirmaties. If the court made the latter choice, then the "doomsday scenario" advanced by the Development District would indeed become a reality. Thousands of "leases intended for security," which have been utilized in this State for years in connection with bond issues, would be void.

In the memorandum briefs, there were comments from both parties concerning the bond validation process, including, specifically, the opinion of the State's Bond Attorney. The opinion concluded that the preparation and issuance of the bonds had occurred in a constitutionally permitted manner. The court presumes that the State's Bond Attorney had reviewed and considered the lease agreement. Indeed, his conclusion does not conflict with that of this court.

Succinctly stated, the Development District must now live with and abide by the agreements that were prepared in connection with the bond issue.

Insofar as the motion for summary judgment is concerned, the court concludes that the lease agreement entered into by and between the Development District and AGAC is a "lease intended for security" as opposed to a "true lease," all as mandated by § 75-1-201(37), Miss.Code Ann.

A separate order will be entered consistent with this opinion.